John Thomas PONTIUS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A04–1001–CR–24.

Court of Appeals of Indiana.

July 20, 2010.

Dori E. Newman, Newman & Newman, PC, Noblesville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

---

1. Ind.Code § 35–42–4–4(c) (2007).

## OPINION

BRADFORD, Judge.

Following a bench trial, Appellant–Defendant John Thomas Pontius appeals his convictions for five counts of Possession of Child Pornography, a Class D felony,[1] for which he received an aggregate sentence of three years in the Department of Correction, with 545 days executed and 550 days suspended to probation. Upon appeal Pontius claims that two of his convictions violate double jeopardy and that he received ineffective assistance of trial counsel. We affirm.

## FACTS AND PROCEDURAL HISTORY

In May of 2007, Indiana State Police Detective Andy Byers, who investigates internet crimes involving child exploitation, detected the transmission of certain suspect images to an Internet Protocol ("IP") address in Carmel. The dates of the transmission of these images ranged between February 19, 2007, and March 14, 2007. Detective Byers provided this information to Noblesville Police Detective Charles Widner, who determined the specific IP address to which the images had been transmitted.

Authorities later executed a search warrant at the home of Pontius's grandparents, who were the subscribers of the IP address at issue. Pontius had lived with his grandparents at certain times in 2007. The computer seized from the home contained a Maxtor 300 gigabyte hard drive ("Maxtor 300"). A search of the Maxtor 300 discovered four videos with the following names: "8 Best little girl in a pink dress, r@ygold hello video (illegal underage lolita preteen pedo).mpg" ("Video 1"), which was downloaded on February 17,

2007; "Best Incest about 14yo cute pigtail german lolita tiny puffies, hairless coochie lots of positions(r@ygold underage pedo).mpg" ("Video 2"), which was downloaded on February 17, 2007; "fdsa3–4yo girl pedo r@ygold hussyfan lolitaguy lsm pthc babyshivid.mpg" ("Video 3"), which was downloaded on February 16, 2007; and "Kid–Dee & Desi–Young Little Kiddy Childs–NOBULL 2 naked midteen girls affectionate, yg man has bit part few sec 1.42(pedofilia)(lez).mpeg" ("Video 4"), which was downloaded on February 16, 2007. All four videos were stored in a single folder.

Authorities ultimately located Pontius at a residence in Westfield. Upon speaking to Pontius, authorities learned that he had downloaded certain materials on two separate computers using search words such as "illegal" and "preteen." Tr. p. 64. Authorities then executed a search warrant at his parents' home in Sheridan and seized the computer there, which contained a Maxtor 80 gigabyte hard drive ("Maxtor 80"). A search of the Maxtor 80 discovered the following two additional videos: "little girls mix (lolitas-preteens-reel kiddymov-r@ygold-hussyfans-underage-girls-childrenpedofilia-pthc-ptsc-xxx-sexy). mpg" ("Video 5"), which was downloaded on July 16, 2007; and "8 Best little girl in a pink dress, r@ygold hello video (illegal underage lolita preteen pedo).mpg" ("Video 6"), which was downloaded on July 16, 2007. Both videos were stored in a single folder.

On July 27, 2007, the State charged Pontius with six counts of possession of child pornography. Counts 1–4 corresponded to Videos 1–4 on the Maxtor 300. Counts 5 and 6 corresponded to Videos 5 and 6 on the Maxtor 80. There is no dispute that Videos 1 and 6, which have the same name, are identical in content.

The charging informations alleged, consistent with the statute, that Pontius had possessed videos of a child whom he "knew to be less than sixteen (16) years of age or who appear[ed] to be less than sixteen (16) years of age." App. p. 10; see Ind.Code § 35–42–4–4(c). At Pontius's bench trial, which was held on May 6 and May 20, 2009, the State's expert witness testified that the persons pictured in the videos were "certainly ... under the age of 18." Tr. p. 83. At the close of trial, defense counsel stated that he had not watched the videos in question. The trial court ultimately convicted Pontius of Counts 1–3 and 5–6, and it acquitted him of Count 4 on the basis that the individuals pictured "could be persons who might be 18 years of age." Tr. p. 122. At his July 22, 2009 sentencing hearing, the trial court sentenced Pontius to concurrent sentences of three years on each count, with 545 days executed—365 of which were to be served at the Department of Correction and 180 at Hamilton County Community Corrections Work Release—and 550 days suspended to probation. This appeal follows.

## DISCUSSION AND DECISION

Upon appeal, Pontius points to the identical content of Videos 1 and 6 and contends that his convictions for Counts 1 and 6 violate double jeopardy under both the federal and Indiana constitutions. Pontius also contends that his trial counsel was ineffective for failing to view these videos, causing prejudice by (1) permitting Pontius to be convicted of two allegedly identical counts, (2) impeding defense counsel's ability to cross-examine witnesses regarding the age of the participants in the video, and (3) undermining defense counsel's argument that Pontius's possession of the videos was not knowing or intentional.

### I. Double Jeopardy

#### A. Federal Double Jeopardy

The Federal Double Jeopardy Clause provides that no person shall "be subject

for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional provision includes protection from multiple punishments for the same offense. *Brown v. State,* 912 N.E.2d 881, 892 (Ind.Ct.App. 2009), *trans. denied.*

Pontius claims that his dual convictions pursuant to Indiana Code section 35–42–4–4(c) for Counts 1 and 6, which are based upon the same video, constitute impermissible multiple convictions in violation of double jeopardy principles. Pontius's argument in this regard presents an issue of statutory interpretation, which is an issue of law we review de novo. *Brown,* 912 N.E.2d at 893. The classic test for multiplicity is whether the legislature intended to punish individual acts separately or to punish the course of action which they make up. *Id.* (citing *Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). Unless there appears in the statute a clear intent to fix separate penalties for the possession of each image of child pornography, the issue should be resolved against turning a single transaction into multiple offenses. *Id.* (citing *Am. Film Distribs., Inc. v. State,* 471 N.E.2d 3, 5 (Ind.Ct.App.1984)).

Legislative intent in enacting a statute is the key consideration when determining whether the double jeopardy clause protects against multiple punishments for the same offense under a particular statute. Specifically, the whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the crime involved. Thus, the touchstone of whether the double jeopardy

clause is violated is the legislature's articulated intent.

*Id.* (quoting *Robinson v. State,* 835 N.E.2d 518, 521 (Ind.Ct.App.2005) (internal citations omitted)). "'In analyzing double jeopardy claims based on multiple punishments, we utilize a method of statutory interpretation in which the court is asked to determine whether the legislature intended to impose separate sanctions for multiple offenses arising in the course of a single act or transaction.'" *Id.* (quoting *Robinson,* 835 N.E.2d at 522).

The crime of possession of child pornography is defined as follows:

A person who knowingly or intentionally possesses:

(1) a picture;

(2) a drawing;

(3) a photograph;

(4) a negative image;

(5) undeveloped film;

(6) a motion picture;

(7) a videotape;

(8) a digitized image; or

(9) any pictorial representation;

that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political or scientific value commits possession of child pornography, a Class D felony.

Ind.Code § 35–42–4–4(c).

This court has recently evaluated this statute in the context of a double jeopardy challenge. *See Brown,* 912 N.E.2d at 896. In determining whether an investigating detective's one-time, seven-minute Lime Wire [2] search, which uncovered five dis-

---

2. Lime Wire was similarly used in the instant case. "The basic Lime Wire program is designed to allow computer users to share files with others and is available on-line for down-load to anyone searching for or looking to share files by key word, category, or name." *Brown,* 912 N.E.2d at 885 n. 3.

tinct images of child pornography, could sustain the defendant's five separate convictions for possessing it, this court first considered the plain language of the statute. *Id.* at 893, 896. Specifically, the General Assembly had defined the crime of possession of child pornography by referencing objects in the singular ("a picture," "a videotape," "any pictorial representation," etc.), suggesting that its clear intent was to make the possession of each separate picture or video a distinct occurrence of offensive conduct in violation of statute. *See id.* at 896. In addition, this court considered the policies behind this statute, including preventing the victimization of children and obstructing the growth of the child pornography industry. *Id.* at 895–96. In light of the statutory language and the policies behind it, the *Brown* court held that "multiple convictions and punishments for possession of child pornography distinguished only by the image so possessed do not violate federal double jeopardy principles." *Id.* at 896.

As evidenced by the above language, however, the *Brown* court's holding rested largely upon the fact that the five images at issue were separate and distinct. Here, the two digital video files at issue are identical and can be distinguished only by the computers they were contained on, the location of those computers, and the time of their downloads.

The State argues that these distinctions are adequate to sustain separate convictions. In support of its position, the State points to the New Hampshire case of *State v. Ravell,* 155 N.H. 280, 922 A.2d 685 (2007). In *Ravell,* the defendant was in possession of a CD–ROM containing pornographic images at the time of his arrest, and he was subsequently convicted for possession of child pornography based upon these images. *Id.* at 686. Later, the defendant was again convicted, in a separate county, based upon the presence of some of these same images on his home computer. *Id.* The defendant appealed his convictions on double jeopardy grounds. *Id.* In denying the defendant's claim, the *Ravell* court was particularly concerned with the language and purpose of its child pornography statute. *Id.* at 687. The *Ravell* court observed that the broad language of its statute, which referenced "*any* visual representation," criminalized the possession of each image, regardless of its duplicate nature. *Id.* at 688. The court additionally found that, consistent with this broad language, the statute's purpose was to aggressively prevent the proliferation of child pornography. *Id.* at 687–88. In the *Ravell* court's view, this purpose would not be served if, in proscribing the possession of child pornography, the volume of pornography or number of volitional acts necessary to obtain it were irrelevant. *See id.* at 687. Accordingly, the *Ravell* court found no double jeopardy violation in the defendant's separate convictions for possession of duplicate images. *Id.* at 688.

■ Like in *Ravell,* Indiana Code section 35–42–4–4(c) uses broad language, including the catchall "any pictorial representation" in proscribing the possession of child pornography. In addition, this court has similarly determined that our General Assembly's purpose underlying that statute is to prevent both child exploitation and the growth of the child pornography industry. We agree with the *Ravell* court that limiting convictions for "double" possession of duplicate copies of child pornography on different computers or hard drives dilutes these purposes. Whether "original" or in duplicate, the more images circulated of a particular child, the more that child is exploited. Similarly, the greater the sheer volume of images available, the larger and more profitable the child pornography industry becomes.

Were Videos 1 and 6 in the instant case the product of data back-up protocols or procedures, perhaps the broad language of section 35–42–4–4(c) would not apply. *See Ravell*, 922 A.2d at 688 (observing that automatic computer back-up may well present a distinguishable case). But here, while two of Pontius's convictions were based upon possession of a single digital video file, he downloaded that file at two separate times, onto two separate computers and hard drives located at two separate residences, as Videos 1 and 6. Through two different, volitional transactions, Pontius possessed the same child pornography in two separate places, and he therefore committed two separate crimes. *See U.S. v. Planck*, 493 F.3d 501, 504 (5th Cir.2007) ("[W]here a defendant has images stored in separate materials, ... the Government may charge multiple counts ... as long as the prohibited images were obtained through the result of different transactions."). The fact that the crimes happened to involve the same images does not alter that fact. We find no federal double jeopardy violation.

### B. Indiana Double Jeopardy

 Pontius also claims that his convictions for Counts 1 and 6 violate double jeopardy under the Indiana Constitution. Article I, Section 14 of the Indiana Constitution provides that "No person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), the Supreme Court developed a two-part test for Indiana double jeopardy claims, holding that

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

(Emphasis in original). The "statutory elements test" referenced in *Richardson* is the same test enunciated in *Blockburger. Brown*, 912 N.E.2d at 896. We have already concluded that Counts 1 and 6 do not run afoul of federal double jeopardy principles under *Blockburger*. With respect to the "actual evidence test," the *Richardson* court explained as follows:

> Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

717 N.E.2d at 53. The Supreme Court later expanded upon this analysis in *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002), as follows:

> The test is *not* merely whether the evidentiary facts used to establish *one* of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

(Emphasis in original). Application of the actual evidence test requires the court to " 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the [fact-finder's] perspec-

tive.'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind.2008) (quoting *Spivey*, 761 N.E.2d at 832). In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. *Id.*; *see Spivey*, 761 N.E.2d at 832.

The Indiana Supreme Court clarified the actual evidence test in *Lee* by holding that "[m]ultiple convictions do not violate Indiana's Double Jeopardy Clause if they logically could have been based on the same facts, but in light of the evidence, the instructions, the charges, and the argument of counsel, there is no reasonable possibility that the jury actually used exactly the same set of facts to establish both convictions." 892 N.E.2d at 1232.

Here, while the charging informations for Counts 1 and 6 were identical, as was the content of the videos at issue in those counts, the evidence used to prove each count was clearly distinct. Counts 1 and 6 were based upon the same digital video file contained on two separate computers and hard drives located at two separate residences and downloaded at two separate times. With respect to the arguments of counsel, there was no suggestion by either counsel that the evidence relating to Counts 1 and 6 was common or interchangeable. Given the two copies of the same, distinct digital video file, and the separate evidence used to prove the existence of those two copies, we are unpersuaded that there is a reasonable possibility that the trial court used exactly the same set of facts to establish both convictions. Accordingly, we reject Pontius's double jeopardy challenge under the Indiana Constitution.

## II. Ineffective Assistance of Counsel

■ Ineffective assistance of counsel claims are analyzed under the two-part test announced in *Strickland v. Washing-*

*ton*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000). To succeed, the petitioner must demonstrate both deficient performance and resulting prejudice. *Id.* Regarding the first part of the *Strickland* test—counsel's performance— we presume that counsel provided adequate representation. *Allen v. State*, 749 N.E.2d 1158, 1166 (Ind.2001). Accordingly, "'[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference.'" *Id.* (quoting *Williams v. State*, 733 N.E.2d 919, 926 (Ind.2000)). The second part of the *Strickland* test—the prejudicial effect of counsel's conduct—requires the defendant to show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Failure to satisfy either part of the *Strickland* test will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind.2002). Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

■ Notably, Pontius's ineffective-assistance-of-counsel claim is before us on direct appeal.

When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight. It is no surprise that such claims almost always fail.

*Woods v. State*, 701 N.E.2d 1208, 1216 (Ind.1998) (quoting *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir.1991)).

## A. Double Jeopardy

Pontius contends that trial counsel rendered ineffective assistance by failing to view the videotapes in Counts 1 and 6, rendering him unable to argue on Pontius's behalf that Counts 1 and 6 violate double jeopardy. Having concluded that Counts 1 and 6 do not violate double jeopardy, we find no prejudice on this ground.

## B. Adequate Cross–Examination

Pontius further contends that trial counsel's failure to view the videotapes at issue rendered him unable to effectively cross-examine the State's witnesses regarding the apparent age of the alleged children participating. Notably, pursuant to Indiana Code section 35–42–4–4(c), the requisite age of the child must be less than sixteen, yet the expert evidence and trial court's judgment were based upon the facts that the participants were under age eighteen. Nevertheless, a brief review of the evidence demonstrates that the videos in Counts 1, 3, 5, and 6 depict participants who are unquestionably pre-pubescent, rendering the sixteen-eighteen age discrepancy relatively immaterial. Given the obviously underage status of these participants, extensive cross-examination by defense counsel regarding the age of the victims would likely have served only to underscore the strength of the State's case.

As for the video in Count 2, whose participant is in more of a pubescent/teenage stage, Pontius fails to show that thorough cross-examination on the matter would probably have created reasonable doubt regarding the participant's underage status. The title of the video indicates that its featured participant is a "14yo" and "underage," and the participant pictured does not appear to be at a particularly advanced stage of development, reinforcing the conclusion that she is under the age of sixteen. Of course, the exact age of the participant is debatable. But Pontius's burden is to show a reasonable *probability* that additional cross-examination by defense counsel would have resulted in the determination that the participant was at least sixteen. Apart from pointing out that the participant has multiple ear piercings, Pontius points to no other facts in support of this conclusion. While multiple ear piercings are perhaps more generally associated with maturity than with youth, so is sexual activity, and the evidence in this case clearly demonstrates that age "norms" are totally—and purposefully—meaningless in this context. We are unpersuaded that the mere fact of ear piercings would have tipped the balance in favor of an acquittal on Count 2, even if the trial court had used the proper reference age of sixteen, rather than eighteen. In light of the evidence, Pontius's argument, and our strict standard of review, we find no prejudice.

## C. Adequate Argument

Pontius finally contends that defense counsel's failure to view the videotape undermined his argument that Pontius's possession of the videotapes was not knowing or intentional. According to Pontius, defense counsel's lack of familiarity with the videos' contents demonstrated that he had not verified with Pontius that Pontius's possession was unintentional. Pontius fails to explain how discussions between defense counsel and himself regarding the specific contents of the videos would materially improve the argument that his possession was unintentional. Indeed, lack of familiarity with the contents just as easily reinforces Pontius's claim of ignorance as it undermines it. We find no prejudice.

## III. Conclusion

Having concluded that Pontius's convictions for Counts 1 and 6 do not violate

double jeopardy, and having further concluded that Pontius's claims of ineffective assistance of trial counsel do not warrant relief, we affirm Pontius's convictions for five counts of possession of child pornography.

The judgment of the trial court is affirmed.

RILEY, J., and MATHIAS, J., concur.