# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 04 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

RONALD REXROAT,                           )
                                          )
    Appellant-Defendant,              )
                                          )
      vs.                          )    No. 49A02-1107-CR-594
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Plaintiff.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-1004-FC-27893

**April 4, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Ronald Rexroat appeals his convictions for two counts of child molesting, as Class C felonies, and the sentence imposed following a jury trial. Rexroat presents the following issues for review:

1. Whether his convictions for two counts of child molesting violate federal or state double jeopardy principles where the two charges are worded identically.

2. Whether a condition of probation requiring Rexroat to have no contact with any person under the age of eighteen unless approved by probation is overbroad and violates Rexroat's First Amendment rights.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Julie and Delbert Ray Ledbetter have three children, a daughter S.L. born on March 28, 2001, and two sons D.L. and C.L. For several months in 2008 and 2009, the Ledbetter family rented the upstairs of a two-story house from Rexroat, their longtime friend and the home's first-floor tenant. The children referred to Rexroat as "Uncle Ronnie," and Rexroat spent time alone with the children, including S.L. Transcript at 100. In early 2009, when S.L. was eight or nine years old, the Ledbetter family moved to another home, but they continued to see Rexroat several times a week.

During 2008 and 2009, Rexroat occasionally took S.L. places without taking her brothers along. For example, he took her to visit a common friend Donna Smitley or to McDonald's to buy chicken nuggets. When S.L.'s parents became suspicious of Rexroat in late 2009, Julie questioned S.L. S.L. had been taught that there are three places on her body that others should not touch her: the places she uses to pee, her "butt," and her

2

chest. Transcript at 64. S.L. told Julie that on three separate occasions Rexroat had "touched" her with his finger in the place she "use[] to go pee" and made circles with his finger while touching her. Id.

On December 21, 2009, Julie reported the abuse of S.L. to the Department of Child Services ("DCS").[1] DCS interviewed S.L. on December 22, but the recording equipment did not work. DCS interviewed S.L. again on March 17, 2010. And on April 6, the State charged Rexroat with two identically worded counts of child molesting, as Class C felonies.[2] Following a trial on June 1, 2010, the jury found Rexroat guilty on both counts. The trial court entered judgment of conviction accordingly and sentenced Rexroat to six years on each count, to be served concurrently, with three years suspended to probation. One of the conditions of Rexroat's probation is that he "shall have no contact with any person under the age of 18 unless approved by probation. Contact includes face-to-face, telephonic, written, electronic, or any indirect contact via third parties." Appellant's App. at 82. Rexroat now appeals.

---

[1] The Affidavit for Probable Cause states that Julie reported the abuse to the Department of Child Services ("DCS") on December 21, 2010, and that DCS interviewed S.L. for the first time on December 22, 2010. The reference to 2010 is apparently a typographical error because the Affidavit was signed on April 6, 2010.

[2] The State did not charge Rexroat for the first incident, which occurred at a lake and was reported by S.L. as the first incident of abuse.

3

## DISCUSSION AND DECISION

## Issue One:  Double Jeopardy

Rexroat contends that his double jeopardy rights under the federal and state constitutions were violated when the State charged him with two identically worded counts of child molesting, as Class C felonies.  Specifically, he argues that his convictions violate both the same elements test under the United States Constitution as well as the statutory elements test and the actual evidence test under the Indiana Constitution.  We address each contention in turn.

Generally, the constitutional protection against double jeopardy under the Federal or Indiana Constitution prohibits a person from being punished twice for the same offense.  Our supreme court has explained the purpose of that right:

> Prohibitions against double jeopardy protect against:  (1) reprosecution for an offense after a defendant has already been convicted of the same offense in a previous prosecution; (2) reprosecution of a defendant after an acquittal; (3) multiple punishments for the same offense in a single trial; (4) reprosecution of a defendant after the conviction has been reversed for insufficient evidence; (5) criminal reprosecution of a defendant in limited circumstances following a previous civil prosecution; (6) reprosecution of a defendant in limited circumstances after a mistrial has been declared.

Richardson v. State, 717 N.E.2d 32, 37 n.3 (Ind. 1999) (citations omitted).  Whether convictions violate double jeopardy is a pure question of law, which we review de novo.  See Grabarczyk v. State, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides:  "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. 5.  Double jeopardy protection under the Constitution is

4

evaluated under the "same elements" test set out in <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932). That test provides: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." <u>Blockburger</u>, 284 U.S. at 304. In other words, the <u>Blockburger</u> test contemplates whether a defendant can be convicted for conduct in a single incident under two separate statutory provisions. <u>See</u> <u>id.</u> The same elements test does not apply in cases where multiple offenses based on <u>separate</u> acts, especially on separate dates, have been charged under the same statute. <u>See</u> <u>id.</u>

And Article I, Section 14 of the Indiana Constitution prohibits double jeopardy, providing that "[n]o person shall be put in jeopardy twice for the same offense." In <u>Richardson</u>, our supreme court set out a two-pronged "same offense" test for determining double jeopardy violations under the Indiana Constitution. The court held that

> two or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to <u>either</u> the statutory elements of the challenged crimes <u>or</u> the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

717 N.E.2d at 49-50 (emphases in original).

Under the statutory elements test, the objective "is to determine whether the essential elements of separate statutory crimes charged could be established

hypothetically.["3] Id. at 50. Thus, "the charged offenses are identified by comparing the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense" by "inspecting the relevant statutes and the charging instrument to identify those elements which must be established to convict under the statute." Id. "Under this test, the second charge must be for the same identical act and crime as [the first offense]." Id at 50 n.38 (internal quotation marks and citation omitted) (alteration in original). Thus, like the same elements test under the United States Constitution, the statutory elements test does not apply where multiple charges are based on a single statute.

Under the second prong of Indiana double jeopardy analysis, the actual evidence test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." Id. at 53. To show that two challenged offenses constitute the "same offense" under that prong, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id.

> This second test in our Indiana Double Jeopardy Clause "same offense" analysis differs significantly from federal jurisprudence under Blockburger, 284 U.S. at 305 . . . . "The Blockburger test has nothing to do with the evidence presented at trial. It is concerned solely with the statutory elements of the offenses charged."

Id. (some citations omitted) (emphases in original). "Application of the actual evidence test requires the court to identify the essential elements of each of the challenged crimes

---

[3] The "statutory elements" test under the Indiana Constitution is "substantially equivalent to the 'same elements' test used in [the] federal double jeopardy analysis under Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." Lee v. State, 892 N.E.2d 1231, 1233 (Ind. 2008).

and to evaluate the evidence from the [fact-finder's] perspective." Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008) (internal quotation marks and citation omitted) (alteration in original). "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." Id. (citations omitted). Our supreme court has further clarified that

> [w]hen separate and distinct offenses occur, even when they are similar acts done many times to the same victim, they are chargeable individually as separate and distinct criminal conduct. This Court has clearly stated: "We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts."

Brown v. State, 459 N.E.2d 376, 378 (Ind. 1984) (regarding multiple counts of rape and sexual deviate conduct arising from series of acts occurring immediately after one another) (citations omitted).

Here, Rexroat first contends that his federal right to be free from double jeopardy was violated when the State charged him with two identically worded counts of child molesting, as Class C felonies. He maintains that "two identical charges brought under the same statute are one and the same under the Blockburger [same elements] test" because it would be "impossible for the State to present evidence that established the elements of one offense without also establishing the elements of the other." Appellant's Brief at 8. Rexroat misunderstands the Blockburger test.

Again, the Blockburger test is limited to cases involving multiple charges for the "same act or transaction[.]" Blockburger, 284 U.S. at 304. Thus, the Blockburger test

7

does not apply in cases involving multiple violations of a single statute. See id.; Sanabria, 437 U.S. at 70 n.24; Braverman v. United States, 317 U.S. 49, 54 (1942) (distinguishing Blockburger, where charges were filed under two statutes, from cases involving a "single continuing agreement" of conspiracy). Here, the State charged Rexroat with two different offenses under the same statute. Thus, the Blockburger same elements test is inapplicable in this case. Rexroat has not shown a double jeopardy violation under the Federal Constitution.

We next consider Rexroat's argument that his right under the Indiana Constitution to be free from double jeopardy was violated in this case. Rexroat first argues that, because the charges are identically worded, the statutory elements test set out in Richardson has been met. But in Richardson our supreme court specifically stated that, when applying the statutory elements test, "the second charge must be for the same identical act and crime as [the first offense]." 717 N.E.2d at 50 n.38 (internal quotation marks and citations omitted) (alteration in original). Because the conduct charged in two counts here arose from two separate incidents, the statutory elements test does not apply.

We applied that rule in Peckinpaugh v. State, 743 N.E.2d 1238, 1242 (Ind. Ct. App. 2001), trans. denied, in which we held that, "where . . . a double jeopardy challenge is premised upon convictions of multiple counts of the same offense, the statutory elements test is inapplicable, because a defendant may be charged with as many counts of an offense as there are separate acts committed." Rexroat contends that that statement from Peckinpaugh "overstates the case" because "the language from Richardson states that a charging information that clearly alleges different acts at different times will easily

pass the 'statutory elements' test, but does not say that the statutory elements test does not apply." Appellant's Brief at 7. Rexroat is incorrect. Again, under Richardson the statutory elements test only applies where multiple charges arise from the same identical act and crime. 717 N.E.2d at 50 n.38. We did not "overstate" the case in Peckinpaugh when we held that a defendant may be charged with as many counts of an offense as there are separate acts. And, in any event, the rule as stated in Richardson does not support Rexroat's argument.

Finally, we consider Rexroat's contention that his convictions fail the second prong of Richardson's "same offense" test, the actual evidence test. First, Rexroat contends that it is "impossible to determine from [the charging information and the jury instructions] whether the jury based both verdicts on a single episode." Appellant's Brief at 9. Again, to satisfy the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. The Supreme Court later expanded upon this analysis:

> The test is not merely whether the evidentiary facts used to establish one of the essential elements of one offense may also have been used to establish one of the essential elements of a second challenged offense. In other words, under the Richardson actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

Pontius v. State, 930 N.E.2d 1212, 1217 (Ind. Ct. App. 2010) (quoting Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002) (emphasis in original)), trans. denied.

9

Rexroat is correct that we may consider the charging information and the jury instructions when applying the actual evidence test. But he completely ignores consideration of the evidence itself. Again, and as the name implies, the actual evidence test considers the evidence actually admitted at trial and used to convict the defendant. Richardson, 717 N.E.2d at 53. At trial S.L. testified that Rexroat molested her at two different times in two completely different locations, one time in a truck in an alley behind a family friend's home and another time in a truck at a storage facility. The evidence clearly shows two different incidents and therefore does not satisfy the actual evidence test.

> In Pontius this court held that
>
> "[m]ultiple convictions do not violate Indiana's Double Jeopardy Clause if they logically could have been based on the same facts, but in light of the evidence, the instructions, the charges, and the argument of counsel, there is no reasonable possibility that the jury actually used exactly the same set of facts to establish both convictions."

930 N.E.2d at 1219 (quoting Lee, 892 N.E.2d at 1232). Rexroat argues that Pontius was "wrongly decided and should be disapproved." Appellant's Brief at 10. But he says nothing of our supreme court's opinion in Lee on which we relied. We are bound by supreme court precedent. DAP, Inc. v. Akaiwa, 872 N.E.2d 1098, 1103 (Ind. Ct. App. 2007). And, in any case, we do not disagree with the holding in Pontius or Lee.

Rexroat is incorrect that, "[w]henever two counts are identically worded, it will be impossible for the State to prove one without also proving the other." Appellant's Brief at 12. Where, as here, there is evidence that shows that the defendant committed multiple offenses at separate times, the State will be able to prove multiple counts of the same

offense. Here, S.L. testified that Rexroat molested her the same way at two separate and distinct locations on different days. Although the charging information and the jury instructions worded the two child molesting counts identically, there was clear evidence of two separate incidents, and the State emphasized that point in closing argument. As such, Rexroat has not demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one count of child molesting were also used to establish the essential elements of the second child molesting count. See Richardson, 717 N.E.2d at 53. Rexroat's challenge under the actual evidence test must fail.

### Issue Two: Probation Condition

Rexroat next contends that one of the conditions of his probation violates his rights under the First Amendment to the United States Constitution. The trial court included as a condition of Rexroat's probation that he "shall have no contact with any person under the age of 18 unless approved by probation." Appellant's App. at 82. Rexroat asserts that that condition is overbroad and "impinges on [his] constitutionally protected liberty interests and his right to association" under the First Amendment. Appellant's Brief at 12. We cannot agree.

We initially observe that

> [a] trial court enjoys broad discretion when determining the appropriate conditions of probation. Freije v. State, 709 N.E.2d 323, 324 (Ind. 1999). This discretion is limited only by the principle that the conditions imposed must be reasonably related to the treatment of the defendant and the protection of public safety. Carswell v. State, 721 N.E.2d 1255, 1258 (Ind. Ct. App. 1999). Where, as here, the defendant challenges a probationary condition on the basis that it is unduly intrusive on a constitutional right, we will evaluate that claim by balancing the

11

following factors: (1) The purpose to be served by probation, (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers, and (3) the legitimate needs of law enforcement.

Smith v. State, 779 N.E.2d 111, 117 (Ind. Ct. App. 2002), trans. denied. We also observed that "child molesters molest children to whom they have access." Id. (citation omitted). Thus, in Smith we held that probation conditions barring Smith from being alone with or having contact with any person under eighteen years of age unless pre-approved and related conditions would reduce his access to children and were related to his rehabilitation. Id. Therefore, we held that such conditions did not constitute an abuse of discretion. Id.

And we have discussed the constitutional challenge to a similar probation condition in another Smith case:

> The "overbreadth doctrine" is "designed to protect innocent persons from having the legitimate exercise of their constitutionally protected freedoms fall within the ambit of a statute written more broadly than needed to proscribe illegitimate and unprotected conduct." The authoritative construction of statutes by state courts controls overbreadth analysis. The crucial question is whether [Indiana Code Section] 35-38-2-2.4[, which allows as a condition of probation a prohibition on contact with any person under sixteen years of age,] "sweeps within its prohibitions a substantial amount of conduct which may not be punished under the First and Fourteenth Amendments." A statute is not overbroad merely because an appellant may conceive of a single impermissible application.

> A trial court has broad discretion to impose conditions of probation which will produce a law abiding citizen and protect the public. Within certain parameters, the condition may impinge upon the probationer's exercise of an otherwise constitutionally protected right. The Constitution does not prohibit the State from punishing dangerous behavior or attempting to prevent recidivism by those who engage in criminal behavior through their associational relationships.

Smith v. State, 727 N.E.2d 763, 767 (Ind. Ct. App. 2000) (citations omitted).

In the 2000 Smith case, we balanced the three factors listed above to determine whether a probation condition that required the defendant to avoid all contact with minors, including inadvertent or unintentional contact, was unduly intrusive on his constitutional rights. The defendant argued that the second prong, the extent to which constitutional rights enjoyed by law-abiding citizens should be enjoyed by probationers, weighed in his favor because the condition required him to avoid even inadvertent or unintentional contact with children. We held that "a condition of probation requiring a probationer to avoid even inadvertent or unintentional contact with children is unworkable and too broad to be reasonably related to the purposes of Indiana Code [Section] 35-38-2-2.4." Id. at 768. But we also concluded that "the failure of [that statute] to explicitly address inadvertent or unintentional contact does not render the statute facially overbroad." Id. Thus, we upheld the probation condition as to intentional contact with persons under sixteen as constitutional, but we also held that "it is inherent in [Indiana Code Section 35-38-2-2.4] that a probationer is not required to avoid inadvertent or unintentional contact with persons less than sixteen years of age." Id. (citation omitted).

Here, Rexroat argues that "the prohibition of incidental contact between the probationer and persons less than eighteen years of age would make it effectively impossible for him to leave his house without violating his probation inadvertently." Appellant's Brief at 13. But the condition at issue does not explicitly prohibit incidental contact. And Rexroat ignores the holding in Smith, above, that a probationer is not required to avoid inadvertent or unintentional contact with minors. Just as we have

13

determined that the statute on which the probation condition at issue is based cannot be read to include inadvertent or unintentional contact with minors, neither may we construe Rexroat's similar condition of probation to prohibit incidental contact with minors. That the condition includes minors who are sixteen and seventeen years of age is of no moment, nor does Rexroat contend as much. Rexroat has not shown that the probation condition regarding contact with minors is unconstitutional.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.