**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**DAVID W. LAMONT**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J. T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|                          |   |                      |
|--------------------------|---|----------------------|
| JEFFREY ARCHER,          | ) |                      |
|                          | ) |                      |
| Appellant-Defendant,     | ) |                      |
|                          | ) |                      |
| vs.                      | ) | No. 49A05-1209-CR-448 |
|                          | ) |                      |
| STATE OF INDIANA,        | ) |                      |
|                          | ) |                      |
| Appellee-Plaintiff.      | ) |                      |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-1109-FA-68637

**September 30, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Jeffrey Archer appeals his convictions of Class A felony child molesting[1] and Class C felony child molesting.[2] He presents multiple issues for our review, which we restate as:

1. Whether the trial court's statement regarding the victim's competency to testify was an impermissible vouching statement;

2. Whether the trial court allowed vouching testimony by multiple witnesses;

3. Whether the trial court erred when it denied Archer's request to present evidence of L.B.'s post-allegation demeanor;

4. Whether Archer was prejudiced by a jury instruction about the level of penetration required to prove he committed Class A felony child molesting;

5. Whether the State presented sufficient evidence Archer committed Class A felony child molesting and Class C felony child molesting; and

6. Whether Archer's trial counsel was ineffective.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Archer is the paternal step-grandfather of L.B., born June 2, 2003. L.B. lives with her maternal grandparents, Michael and Cindy Tollar, who have had full custody of L.B. since December 5, 2008. The Tollars allowed L.B. to visit with her paternal grandmother, Patricia, who is married to Archer, every other weekend from Friday night to Sunday after dinner. L.B. did not have her own bed at Archer's house, so she slept on an air mattress in the living

---

[1] Ind. Code § 35-42-4-3(a).
[2] Ind. Code § 35-42-4-3(b).

room or in the bed between Patricia and Archer.

Sometime in early 2011, Cindy noticed L.B.'s demeanor would be different after she returned from visits with the Archers. On May 2, 2011, L.B. told her school's student services advisor that Archer had touched her multiple times on the bottom, vagina, back, and chest. L.B. also reported Archer touched her inside her underwear and once put his fingers in her genitalia. The advisor contacted the Department of Child Services.

After detectives and service providers interviewed L.B., the State charged Archer with one count of Class A felony child molesting and two counts of Class C felony child molesting. On July 16, 2012, a jury found Archer guilty as charged. The trial court entered a conviction of Class A felony child molesting and merged the two counts of Class C felony child molesting. The trial court sentenced Archer to twenty-five years for Class A felony child molesting and two years for Class C felony child molesting, to be served concurrently.

## DISCUSSION AND DECISION

1.     <u>Statement of Competency as Impermissible Vouching Statement</u>

Indiana Evidence Rule 601 provides, in relevant part, "[e]very person is competent to be a witness except as otherwise provided in these rules or by the act of the Indiana General Assembly." Prior to 1990, children under ten years old were presumed incompetent to testify, but children are not explicitly excluded as competent witnesses under the current version of Evid. R. 601. *Aldridge v. State*, 779 N.E.2d 607, 609 (Ind. Ct. App. 2002), *trans. denied*. The determination of witness competency lies within the sound discretion of the trial court. *Harrington v. State*, 755 N.E.2d 1176, 1181 (Ind. Ct. App. 2001). To determine

3

whether a child is competent to testify, the trial court considers whether the child "(1) understands the difference between telling a lie and telling the truth, (2) knows she is under a compulsion to tell the truth, and (3) knows what a true statement actually is." *Id.*

The trial court spoke with L.B. to determine her competency:

Court:      [D]o you understand the difference between telling the truth and telling a lie?
[L.B.]:     Yes.
Court:      Okay. If I told you that I was sitting up here and this robe in [sic] color, would that be the truth or would it be a lie?
[L.B.]:     Lie.
Court:      Okay. And sometimes if you get caught telling a lie, what happens to you?
[L.B.]     I get in trouble and I have a time out.

(Tr. at 93.) The court then stated: "Okay. Very good. I'm very satisfied that this witness understands the oath and that she is competent, understands the difference between the truth and a lie and understands the consequences of telling a lie." (*Id.*)

Archer argues "[t]he trial court vouched for the testimony of L.B. by being 'very satisfied' L.B. was competent to testify, and knew the difference between the truth and a lie in front of the jury." (Appellant's Br. at 22.) We first note Archer did not object to the court's statement. Failing to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission is fundamental error. *Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011). Fundamental error is an error "so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id.* n.1.

The trial court's statement did not vouch for L.B.'s credibility. Whether a witness is competent and whether a witness is credible are different questions, the former for the trial

4

court and the latter for the jury. *Kien v. State*, 866 N.E.2d 377, 385 (Ind. Ct. App. 2007), *trans. denied*. The trial court's statement addresses L.B.'s competency; it almost directly recites the factors set forth *in Harrington* for determining the competency of a child witness. The trial court's statement did not amount to fundamental error.

2. Allegations of Vouching Testimony

We generally review admission of evidence under an abuse of discretion standard. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. "[W]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Evid. R. 704(b). Our Indiana Supreme Court has addressed the admissibility of testimony from adults regarding whether a child witness testified truthfully:

> Although it is entirely proper for the expert witness to state her opinion as to the general competence of the child witness and the child witness's ability to understand the subject, it was entirely improper for that same witness to review each item of the child's testimony and to specifically vouch for the truthfulness of such testimony. Such testimony was an invasion of the province of the jury in determining what weight they would place upon the child's testimony.

*Head v. State*, 519 N.E.2d 151, 152 (Ind. 1988). Archer argues the trial court allowed three witnesses to vouch for L.B.'s credibility as a witness.[3]

---

[3] Archer also argues the trial court abused its discretion in admitting the testimony of Lauren McClellan, a DCS investigator, regarding a letter from McClellan to Archer. He asserts "[t]his testimony was solicited to show the jury that Ms. Archer knew of the allegations prior to Detective McAllister trying to talk with her." (Appellant's Br. at 22.) As Archer offers no legal authority to suggest the admission of McClellan's testimony regarding the letter was improper, the argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring each argument be supported by legal authority).

5

## A. Michael Tollar

Archer alleges Michael Tollar, L.B.'s maternal grandfather vouched for L.B.'s testimony when asked about L.B.'s behavior after her visits with Archer stopped:

[State]: Since the visits with the Archers had stopped, have you noticed the behavioral problems you described to the jury, have you noticed those continuing, or has there been a change[?]

[Defense Counsel objects, and objection overruled.]

[Tollar]: Uhm, it's a dramatic shift as far as I'm concerned. Uhm, the tiredness, the misbehavior, uh, none of that ever has come back. Uhm, you know, she's still a, you know, seven, eight, nine year old now. But, you know, that dynamic of returning and what was going on with her misbehaving for a day or two afterwards and being stressed, that's gone. She's very well adjusted, as far I can say now.

(Tr. at 179-80.) Archer does not explain how Tollar's testimony regarding L.B.'s changed demeanor amounts to vouching testimony. Therefore, we cannot say the trial court abused its discretion when it admitted Tollar's testimony.

## B. Diane Bowers

Archer argues Diane Bowers, a forensic investigator who interviewed L.B., vouched for L.B.'s truthfulness:

[State]: Okay. How would you describe L.B.'s demeanor during your interview with her?

[Bowers]: Uhm, she was quiet, but she was very matter of fact when I asked her questions. Uhm, she's what I call a thinker, so she – when I'd ask questions, she'd think about [it] just a little bit. Uhm, she's very articulate.

[State]: Okay. And [over] the course of your experience interviewing all of these children, is there a specific way for you [to] expect children who are disclosing [sexual abuse] to act?

[Bowers]: No.

[Defense]: I'm going to pose an objection, Your Honor. This would be behavior evidence used as vouching.

6

[Court]: I don't think she's trying to vouch. I think [she's] asking a general question based on the 5500 interviews that she's conducted and so your objection is overruled [ ].

[State]: Is there a typical way you expect children to act during [their] interview with you?

[Bowers]: Not at all.

[State]: You see everything, the entire spectrum from stoic, if you will, to hysterical?

[Bowers]: To laughing, yes, all of it.

[State]: Do you ever – in any of your 5500 interviews, have any of those children ever not disclose a molest?

[Bowers]: Oh, sure.

[State]: Okay. Does that happen quite often?

[Bowers]: A lot, yes.

[State]: All right. Do you go into interviews with children hoping that they will disclose the sexual assault?

[Bowers]: No.

[State]: During the course of your training and experience, have you been educated on the idea of children and their ability to be coached?

[Bowers]: Yes.

[State]: And what is a child who [has] been coached, what does that mean?

[Bowers]: Uhm, well, there are some indicators that a child might have been coached, there's probably a lot [of] them [,] the one[s] that come to mind are uhm, -- if I ask a child if something happened and all they can say is, uhm, Mikey touched my pee pee –

[Witness' cell phone rings, and conversation regarding cell phone occurs.]

[State]: What are the – you were saying if all the child can say is that Mikey touched my pee pee?

[Bowers]: Pee pee, and they can't give me anymore [sic] information about that. That might be an indicator. It might be an indicator if [their] language skills don't match what they're telling me. So if they're using words that are more adult, or like words that a normal child that age might use. Uhm, also if it sounds scripted x [sic] like they're reading a movie part or something and uhm, that's it, but they can't give me details – I love details – and if they can't give me details, that might be an indicator. Uhm, of course, you have to take into consideration another – is motive, but that's not something that I really see. So there – there are just different kinds of indications.

[State]: Okay. And based on your training and experience and 5500

7

interviews, uhm, did you observe any of those indicators when
you interviewed L.B.?

[Bowers]: No.

(Tr. at 298-301.)

In *Kindred v. State*, 973 N.E.2d 1245, 1257 (Ind. Ct. App. 2012), we discussed the

general prohibition against vouching for the credibility of a child witness in a molestation

case:

> We read *Hoglund* [*v. State*, 962 N.E.2d 1230, 1235 (Ind. 2012)] to suggest that
> testimony about whether a child has been coached amounts to the same
> improper commentary on the child's truthfulness as testimony about whether a
> child is prone to exaggerate or fantasize about sexual matters. *We hold that
> general testimony about the signs of coaching, as well as the presence or
> absence of those signs in the child victim at issue, preserves the ultimate
> credibility determination for the jury and therefore does not constitute
> vouching.* By contrast, where a witness opines as to whether the child victim
> was coached – offering an ultimate opinion, as [the witness] did here – the
> witness invades the province of the jury and vouches for the child.

*Id.* (emphasis added).

Bowers described the indicators she looks for to determine whether a child has been

coached to report untrue allegations of molestation. The State did not ask Bowers whether

she thought L.B. had been coached; instead, the State asked Bowers if she observed any of

those indicators in L.B. Therefore, based on *Kindred*, we cannot say the trial court abused its

discretion by admitting Bowers' testimony.

### C. Detective Eli McAllister

Archer also argues Detective McAllister, who investigated the case and interviewed

L.B. about the alleged incidents of molestation, vouched for L.B.'s truthfulness:

[State]: You had told the jury that when you reviewed the Johnson

8

County interview, you said that you were clear that L.B. was ta[l]king about penetration, but that you wanted Diane Bowers to clarify more specifically what happened?

[McAllister]: Uhm, I wasn't clear on what she…

[Court holds sidebar conference regarding Defense objection.]

[State]: Now, detective, I think you were getting ready to explain what [it] was you wanted to clarify with regard to digital penetration?

[McAllister]: Yes. Uhm, what I listened to, it clearly sounded as though she was describing being sexually penetrated. However the proper follow-up questions to allow her the opportunity to fully explain exactly how it happened and how it took place and maybe some of those details surrounding it. That follow-up question wasn't asked by Lauren McClellan on the interview – or on the recording that I watched. I wanted to have a second interview simply to ask the follow-up questions to what she described and what sounded like to me as [sic] sexual penetration. To sort of clarify that point and not go forward with a criminal case without being sure of [what] we were dealing with.

(Tr. at 346-49.) Detective McAllister's statements regarding L.B.'s interview with Bowers did not vouch for L.B.'s truthfulness. He expressed no opinion "concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusion." Evid. R. 704(b). Instead, Detective McAllister testified there were parts of L.B.'s interview with Bowers on which he wished to follow-up. The trial court did not abuse its discretion when it admitted Detective McAllister's testimony over Archer's objection.

3.     Denial of Request to Admit Evidence of L.B.'s Post-Allegation Behavior

Archer sought to admit counseling records regarding L.B.'s post-allegation behavior, including an incident which happened at her school and the therapist concluded was a result of something L.B. experienced when visiting her mother sometime after the incidents with

9

Archer occurred. The trial court denied the request because the evidence was hearsay, irrelevant, and "[t]he probative value is far outweighed – far outweighed by the prejudicial effect because the mother's background had nothing to do with, in this Court's opinion, with these allegations." (Tr. at 288.) Archer concedes the evidence from the counseling records might not have been admissible initially, due to its prejudicial nature, but the State opened the door to such evidence when it questioned Cindy Tollar about L.B.'s post-allegation demeanor. We disagree.

Whether the State opened the door to this evidence is irrelevant, because the evidence was inadmissible. Archer indicated he did not intend to have the social worker who created the records testify, and the records presumably contained statements by L.B. *See* Evid. R. 801 (hearsay is a statement, "other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also* Evid. R. 802 ("Hearsay is not admissible except as provided by law or by these rules."); *and see* Evid. R. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). As Archer has not demonstrated the records were not hearsay or that an exception applies, the trial court did not abuse its discretion when it denied Archer's request to admit L.B.'s counseling records.

### 4. Final Instruction 6

Instructing the jury is a matter assigned to the sound discretion of the trial court, and we review such decisions only for abuse of discretion. *Hubbard v. State*, 742 N.E.2d 919,

10

921 (Ind. 2001), *cert. denied* 534 U.S. 869 (2001). An improper instruction will merit reversal only if it so affects the entire charge that the jury is misled as to the law in the case. *Id.* In reviewing a challenge to a jury instruction, we consider whether the instruction correctly states the law, whether there was evidence in the record to support giving the instruction, and whether the substance of the tendered instruction is covered by other instructions. *Id.* "[A]n instruction directed to the testimony of one witness erroneously invades the province of the jury when the instruction intimates an opinion on the credibility of a witness or the weight to be given to his testimony." *Pope v. State*, 737 N.E.2d 374, 378 (Ind. 2000).

Archer takes issue with Final Instruction 6, which reads: "Proof of the slightest penetration is sufficient to sustain a conviction for child molesting based upon penetration of the female sex organ or anus by the male sex organ or an object." (App. at 161.) Archer argues the instruction "unfairly highlights the testimony of L.B. . . . presents the appellate standard of review which [sic] is not relevant to the jury's function as a fact-finder. . . .[and] the jury was possibly confused or lead [sic] to a verdict of conviction [sic] by the term 'slightest.'" (Appellant's Br. at 24.)

As Archer did not object to the instruction at trial, he has waived the issue for our review. *See Stafford v. State*, 736 N.E.2d 326, 332 (Ind. Ct. App. 2000) (when defendant does not make timely objection to jury instructions, the issue is waived for appellate review). To avoid waiver, the defendant must demonstrate fundamental error. *Id.* For an error to be fundamental, it must be a "substantial, blatant violation of basic principles of due process that

11

renders the trial unfair to the defendant." *Id.* To justify reversal based on an erroneous jury instruction, "the error must be of such a nature that the whole charge of which it forms a part misleads the jury as to the law of the case." *Id.*

Such is not the case here. Jury Instruction 6 is a correct statement of law. *See Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996) ("Proof of the slightest penetration is sufficient to sustain convictions for child molesting."). L.B. testified penetration occurred, and Archer does not argue the information in Jury Instruction 6 is duplicative of another instruction. Final Instruction 6 was not error.

### 5. Sufficiency of Evidence

When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the decision. *Id.* at 147.

### a. Class A Felony Child Molesting

To prove Archer committed Class A felony child molesting, the State had to present

evidence Archer "perform[ed] or submit[ed] to sexual intercourse or deviate sexual conduct" with a child under the age of fourteen, when Archer was over twenty-one years old. Ind. Code 35-42-4-3(a)(1). Archer argues L.B.'s testimony was incredibly dubious and there was no circumstantial evidence to support it. We disagree.

Under the "incredible dubiosity rule" we may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted 'inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Rodgers v. State*, 422 N.E.2d 1211, 1213 (Ind. 1981). We will reverse a conviction if the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt. *White v. State*, 706 N.E.2d 1078, 1079-80 (Ind. 1999).

Archer argues inconsistencies between L.B.'s testimony at trial and during a deposition make her testimony incredibly dubious. A conviction of child molesting may rest on the uncorroborated testimony of the victim. *Barger v. State*, 587 N.E.2d 1304, 1308 (Ind. 1992), *reh'g denied*. L.B. testified Archer touched her genitalia inside of her underwear, he put up to three fingers inside of her vagina and she knew he put his fingers inside of her vagina because it hurt. Archer does not point to any of L.B.'s testimony that is "inherently improbable." Archer has not demonstrated L.B.'s testimony was incredibly dubious, and we decline Archer's invitation to reweigh the evidence or judge L.B.'s credibility. *See Drane*, 867 N.E.2d at 146.

b. Class C Felony Child Molesting

To convict Archer of Class C felony child molesting, the State had to prove Archer,

with a child under age fourteen, "perform[ed] or submit[ted] to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person." Ind. Code § 35-42-4-3(b). Archer argues the State's evidence was insufficient because "[t]here was no direct or circumstantial evidence to infer that the alleged touches were to satisfy or arouse the sexual desires of Archer." (Appellant's Br. at 21.) We disagree.

Evidence of mere touching is not sufficient to prove Class C felony child molesting. *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*. The State must prove the "act of touching was accompanied by the specific intent to arouse or satisfy sexual desires." *Id*. That intent "may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Id*.

L.B. testified Archer touched her chest and stomach on top of and underneath her shirt multiple times and the touching occurred while L.B. was in bed with Archer and L.B.'s grandmother. Further, L.B. testified Archer touched her vagina, and once put his fingers inside her vagina. It is reasonable to infer from that evidence Archer intended to arouse or satisfy his sexual desires. *See Altes v. State*, 822 N.E.2d 1116, 1122 (Ind. Ct. App. 2005) (evidence sufficient to prove Class C felony child molesting when Altes touched areas not associated with sex organs under the victim's clothing), *trans. denied*.

6.    Ineffective Assistance of Counsel

We begin our review of a claim of ineffective assistance of counsel with a strong

14

presumption "that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012) (citation omitted). Counsel has wide latitude in selecting trial strategy and tactics, which will be subjected to deferential review. *Id*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Saylor v. State*, 765 N.E.2d 535, 549 (Ind. 2002).

An ineffective assistance challenge requires a defendant to establish both deficient performance and resulting prejudice. *Pontius v. State*, 930 N.E.2d 1212, 1219 (Ind. Ct. App. 2010), *trans. denied*. Performance is deficient when trial counsel's representation falls below an objective standard of reasonableness causing errors sufficiently serious to amount to a denial of the Sixth Amendment right to counsel. *Wesley v. State*, 788 N.E.2d 1247, 1252 (Ind. 2003). Prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id*. If defendant does not establish prejudice, we need not evaluate trial counsel's performance. *Pontius*, 930 N.E.2d at 1219.

Archer argues trial counsel was ineffective because (1) defense counsel did not object to alleged attacks against defense counsel; (2) counsel did not object to allegations of name-calling by Archer and his wife; (3) counsel did not submit any proposed final instructions; and (4) counsel did not "require the trial court to read or submit the preliminary instructions on the elements of the charges against Archer." (Appellant's Br. at 26.)

15

a.      Failure to Object to Alleged Attacks On Defense Counsel

To demonstrate ineffective assistance of counsel for failure to object, a defendant must "prove that his objections would have been sustained, that the failure to object was unreasonable, and that he was prejudiced." *Potter v. State*, 684 N.E.2d 1127, 1134 (Ind. 1997). Archer claims his defense counsel should have objected to the State's comment regarding defense counsel's diagram, which included a person with six instead of five toes, and its criticism of defense counsel's questions during L.B.'s deposition. Archer does not indicate what objections could have been made. He argues the alleged attacks were "nothing more than tactics to garnish sympathy for L.B., and to unfairly prejudice Archer," (Appellant's Br. at 26), but he does not explain how these comments prejudiced him. Because he has not demonstrated prejudice he has not demonstrated defense counsel was ineffective when he did not object to comments disparaging defense counsel.

b.      Failure to Object to Allegations of Name-Calling

Archer claims his defense counsel should have objected when the State asked Archer if he ever called Cindy Tollar a "bitch." (Tr. at 372.) Defense counsel did object, and the objection was overruled. We cannot find counsel was ineffective for failing to object when counsel objected to the statement in question.

Archer also claims counsel should have objected when the State asked Archer and his wife, whether Archer's wife called L.B. a "little heifer." (*Id.* at 376.) Archer does not indicate what objection defense counsel should have made, and the State introduced evidence of the statement through refreshed recollection of a telephone call between Archer and his

16

wife wherein his wife called L.B. a "little heifer." (*Id.* at 524.) However, Archer has not demonstrated how this testimony resulted in prejudice against him, and thus he has not demonstrated trial counsel was ineffective for failing to object to this particular line of questioning.

> c.      <u>Failure to Submit Presumption of Innocence Instruction</u>

An instruction that "advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so, must be given if requested." *Robey v. State*, 454 N.E.2d 1221, 1222 (Ind. 1983). Archer argues his defense counsel was ineffective because he did not tender an instruction regarding the presumption Archer was innocent. However, the jury was so instructed. Final Instruction 7 reads: "Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt." (App. at 162.) Archer has not demonstrated his counsel was ineffective for failing to tender an instruction to the same effect.

> d.      <u>Final Instructions Regarding Elements of the Crimes</u>

Archer contends his defense counsel should have required the trial court "to read or submit the preliminary instructions on the elements of the charges against Archer." (Appellant's Br. at 26.) The trial court provided the jury with a copy of the preliminary instructions. Those instructions included the elements of the crimes with which Archer was charged. The trial court twice told the jury to consider both the preliminary and final

17

instructions when coming to a verdict. Archer has not demonstrated the absence of an oral iteration of the elements of the crimes prejudiced him and, therefore, he has not demonstrated his counsel was ineffective for not requesting such an iteration.[4]

## CONCLUSION

The trial court did not make an impermissible vouching statement when it indicated L.B. was competent to testify. Nor were statements made by Michael Tollar, Diane Bowers, and Detective MacAllister impermissible vouching statements. The trial court did not abuse its discretion when it declined to admit L.B.'s post-allegation counseling records because the records were hearsay within hearsay. Final Instruction 6 did not prejudice Archer, and the State presented sufficient evidence he committed Class A felony child molesting and Class C felony child molesting. Finally, Archer has not demonstrated his defense counsel was ineffective. Accordingly, we affirm.

Affirmed.

BAKER, J., and MATHIAS, J., concur.

---

[4] Archer argues even if the errors he alleges are not individually sufficient to reverse his convictions, the cumulative effect of the errors denied him a fair trial. As we find no error, we need not address that argument.

18