GILLES DUBE vs. MIDDLESEX CORPORATION & others.[1]

No. 01-P-761.

Middlesex. April 3, 2003. - October 24, 2003.

Present: MASON, KANTROWITZ, & DOERFER, JJ.

*Handicapped Persons. Employment,* Discrimination, Termination, Retaliation.

In an employment discrimination action, a Superior Court judge properly granted summary judgment to the defendant employer, where the plaintiff, who had performed truck driving and construction work for the defendant, had no chance of proving that he was laid off for a "handicap" as that term is used in G. L. c. 151B, § 1(17)(a), rather than a legitimate business reason, because the limitation in the range of motion of the plaintiff's right arm, which interfered with his ability to operate a two-stick truck, did not constitute a substantial limitation of the plaintiff's major life activity of working, either in his work for the defendant, or in his subsequent construction and truck driving employment [737-738]; likewise, the plaintiff neither had a "record of such impairment" under G. L. c. 151B, § 1(17)(b), based on damage suffered to his arm [738], nor was he "regarded as having such impairment" under G. L. c. 151B, § 1(17)(c), where the defendant did not misapprehend limitations based on a misconception of a disability the defendant perceived that the plaintiff suffered, but instead provided him with some accommodations he requested [738-739].

This court concluded that a plaintiff in an employment discrimination action had waived any claims of error based on a theory of retaliation which he had not properly raised below, and that, in any event, the record lacked support for a retaliation claim. [739-741]

CIVIL ACTION commenced in the Superior Court Department on June 9, 1998.

The case was heard by *Wendie I. Gershengorn,* J., on a motion for summary judgment.

*James R. Tewhey* for the plaintiff.

*Kay H. Hodge* for the defendants.

DOERFER, J. The plaintiff, Gilles Dube, suffered some permanent impairment in the use of his right arm due to a

[1] Alfred S. Aponas and John Cavatorta.

motorcycle accident in 1985. He worked for the defendant, Middlesex Corporation (Middlesex), doing construction and driving a truck from 1989 to 1995. He claims that he suffered employment discrimination in violation of G. L. c. 151B, § 4(16), when he was not rehired in the spring of 1996 after what he claims was a seasonal layoff. Middlesex claimed that the plaintiff quit before the end of the work season in 1996, as a consequence of which he was not rehired in the spring. A Superior Court judge granted summary judgment to Middlesex on the ground that the plaintiff had no chance of proving that he was not laid off for a legitimate business reason. We affirm the judgment, but on the ground that plaintiff was not, on the summary judgment record, a "handicapped person" as that term is used in G. L. c. 151B, § 1(17).

*Facts.* We take the facts from the summary judgment record in the light most favorable to the plaintiff. *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The plaintiff suffered an injury to his right arm in 1985 when the dirt bike he was riding went over a bump, and he went over the handlebars. This crash dislocated his shoulder, broke three fingers, and produced a compound fracture of the right humerus, just below the ball where the arm connects into the shoulder socket. The shattered humerus protruded into the arm pit, cut the biceps and severed the musculotaneous nerve, tore the brachial plexus, and injured the ulna and radial nerves. Limited range of motion and significantly reduced strength resulted.

He was treated surgically, including a nerve graft four months after the injury. The graft proved unsuccessful. He was in rehabilitative therapy for two years. He remains partially paralyzed in the upper right quadrant, with loss of muscle function and significant atrophy. As a result of the compound fracture healing imperfectly, the arm does not sit correctly in the shoulder socket.

He had been employed at the time of the accident, following which he was out of work for two years. He did not return to his former employment because he could not manipulate large boxes due to limitations of movement in his arm, and because a more senior employee had taken over his former position.

He took a job at Erickson Construction in 1987, where he

drove a truck, operated a backhoe, and did regular construction work. At that job, he lifted bales, rocks, shovels, and rakes. He testified at his deposition that the more he used his arm, the stronger it got. He left Erickson Construction to take a job in sales, but resigned because he wasn't getting enough exercise for his arm.

Following the sales job, Dube worked for Middlesex from 1989 through 1995. Subsequent to Middlesex, he has continued to work in construction: laboring, driving trucks, and operating construction equipment. He was a backhoe operator for New England Remediation seasonally from June, 1996, to November, 1996, and a truck driver and backhoe operator for Leighton White, seasonally from March, 1997, until his deposition in 1999.

At his deposition, he admitted that he had no trouble walking, seeing, speaking, or breathing; that he could lift, stand, sit, think, and hear. He cannot throw a baseball or raise his arm fully. He claimed that he is unable to operate a truck with two stick shifts, but agreed that he could manage if he had to for a drive or two. His doctor told him to keep working hard to improve his arm. In his job application, he did not describe anything he could not physically do. He passed the test given by the Department of Transportation in 1996 and 1998 for driving a truck of the type supplied for him by Middlesex.

His claim to be handicapped arises out of the limitation in the range of motion of his right arm, which interferes with his ability to operate a two-stick truck. If he is provided with a special arm rest for a single-stick truck, this impairment, he claims, is accommodated and enables him to operate a single-stick truck. At an August, 1994, meeting to discuss Dube's work performance, Middlesex suggested installing an armrest in Dube's truck to make his driving more comfortable. The armrest was installed in 1994, but Dube had it removed, complaining that it was in his way and that he hurt himself. During his deposition, he testified that he repeatedly requested it be reinstalled, but that Middlesex did not reinstall it until the following season, 1995. Dube also repeatedly requested assignment only to single-stick trucks and to construction where he could perform more manual labor than when doing paving work. He was not as-

signed exclusively either to construction or to single-stick trucks.

1. *Plaintiff had no "handicap" as that term is used in G. L. c. 151B.* General Laws c. 151B, § 4(16), inserted by St. 1983, c. 533, § 6, states in material part that it is an unlawful practice for an employer "to . . . refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation . . . ." "Handicap" means "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) record of having such impairment; or (c) being regarded as having such impairment." G. L. c. 151B, § 1(17), as amended by St. 1989, c. 722, § 11. A "qualified handicapped person" is a "handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." G. L. c. 151B, § 1(16), as inserted by St. 1983, c. 533, § 2.

The evidence, even viewed most favorably to the plaintiff, cannot support a reasonable inference that any of the plaintiff's major life activities are substantially limited. He does not allege a substantial limitation in any major life activity other than certain aspects of his working, and he admits that he is able to accomplish strenuous physical labor in spite of the motion, flexibility, and strength limitations of his right arm. While the parties have not cited, and we have not found, any Massachusetts case law discussing substantial limitations in the major life activity of working, considerable Federal authority has construed the analogous Federal disability discrimination statutes. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). This case is analogous to *Mowat* v. *Transportation Unlimited, Inc.*, 984 F.2d 230, 230-232 (8th Cir. 1992), where a truck driver whose work-related shoulder injury prevented him from lifting objects over his head (an essential job function)

was fired and subsequently was continuously employed driving trucks in positions that did not require such lifting was not entitled to protection by the Iowa disability statutes because he could not show a substantial limitation in obtaining satisfactory employment; his injury was not generally disabling and did not prevent him from working as a truck driver. Dube was not substantially limited in working for Middlesex, and the record does not show that he has been substantially limited in his subsequent construction and truck driving employment. See *Bolton* v. *Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir. 1994), cert. denied, 513 U.S. 1152 (1995) (independent of the employee's inability to perform the essential functions of the job, the employee's failure to demonstrate any significant restriction in performing a class of jobs or a broad range of jobs in various classes was fatal to his Federal disability discrimination claim; summary judgment for employer affirmed). See generally *Dutcher* v. *Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995) ("[T]he inability to perform one aspect of a [single] job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working").

Neither did he have a "record of such impairment" as used in § 1(17)(*b*). The intent of the record of disability prong is to prevent discrimination based on a history of disability, and it requires a substantial limitation of a major life activity. Where records of impairments show no greater record limitations than a plaintiff's continuing impairments, if the continuing impairments are insufficiently limiting with regard to major life activities to qualify plaintiff as disabled, then the record of impairments will also fail. *Colwell* v. *Suffolk County Police Dept.*, 158 F.3d 635, 645 (2d Cir. 1998), cert. denied, 526 U.S. 1018 (1999). Dube has not offered evidence to prove that his damaged arm significantly limits any major life activity.

His claim that he was "regarded as having such impairment" is not borne out by the summary judgment record. His request for accommodation and the delivery of a doctor's note describing his physical problem did not transform his limitations into ones that impaired a major life function, because Middlesex did not interpret Dube's limitations as significantly limiting his ability to work. Contrast *Taylor* v. *Pathmark Stores, Inc.*, 177 F.3d 180, 187-191 (3d Cir. 1999).

The "regarded as" prong covers instances where one is discriminated against by an employer who considers the victim to have such an impairment, and requires a mistake — either mistaking whether the employee has an impairment, or mistaking a nonlimiting impairment for one which is substantially limiting. *Sutton* v. *United Air Lines, Inc.*, 527 U.S. at 489. The purpose of this section is to address inaccurate stereotypes associated with disabilities, and limitations improperly and unfairly imposed on people who are considered to be disabled. In this case, Dube requested accommodations from Middlesex for a damaged arm that he considered a disability. The record shows that Middlesex provided him with some accommodations, even if not all the ones he requested. He should not now be heard to argue that they inappropriately regarded and treated him as disabled by providing him with accommodations that he asked for when he claimed he was disabled.[2] They did not misapprehend limitations based on a misconception about a disability they perceived he suffered; rather, they took him at his word and accepted his physician's statements that he was injured, and they tried to work with him, at least to some extent, to accommodate his requests. He was not the victim "of stereotypic assumptions, myths, and fears regarding [his] limitations." *Dahill* v. *Police Dept. of Boston*, 434 Mass. 233, 241 (2001).

2. *Other claims.* The plaintiff states in a conclusory manner in his appellate brief that "the Superior Court decision completely ignores the plaintiff's claim of retaliation. The plaintiff's complaint alleges that the termination was in retaliation for his complaints and requests for accommodation. Dube became aware of the fact that he had been terminated only in the spring of 1996. He could not have filed a claim of retaliation prior to his knowledge of the fact that he was being retaliated against. Therefore, that claim must stand."

In his complaint, the only reference to the concept of retaliation is in paragraph 31 where he states, "Dube believes and

[2] No stipulation of disability should be imputed to an employer who accommodates an employee; "[o]therwise, costless accommodations to physical complaints . . . would entail large future costs, would discourage the employment of persons with minor limitations, and would promote litigation without assisting persons entitled to protection of the [disability statutes]." *Colwell* v. *Suffolk County Police Dept.*, 158 F.3d at 646.

therefore avers that he was retaliated against in the terms and conditions of his employment because he is a handicapped person in violation of G. L. c. 151B." The issue of retaliation was not adequately raised before the Superior Court judge by the plaintiff, a fact pointed out by the defendants both in their brief in support of their motion for summary judgment and in their response to the plaintiff's opposition to their motion, where they noted that the plaintiff had not alleged any facts in his complaint that would support such a claim. Merely stating in his brief before this court that the Superior Court judge did not deal with the retaliation claim does not constitute reasoned argument in support of that claim. Furthermore, the failure of the Superior Court judge to deal with retaliation is explained by plaintiff's failure to raise the issue before that court. In these circumstances, the plaintiff has waived any claims of error based upon a theory of retaliation. See *Liability Investigative Fund Effort, Inc.* v. *Massachusetts Med. Professional Ins. Assn.*, 418 Mass. 436, 441 n.4, cert. denied, 513 U.S. 1058 (1994).

In any event, there is no record support for a claim of retaliation. The plaintiff's requests for accommodation began in 1992 and continued through 1995. He visited the human resource department in 1994. His supervisor expressed displeasure with the plaintiff going over his head in 1994, when Dube sought assistance further up the management chain in his request for reassignment to construction from paving work. Nevertheless, he was rehired for the 1995 season, even after the expression of his supervisor's displeasure. By then, the previously displeased supervisor had been promoted, and in 1995, Dube not only sought but also received his intercession with the then current general superintendent of construction in order to have Dube transferred back into construction, where he in fact worked for most of the 1995 season.

These facts do not support an inference of ongoing animus from the events of 1994 upon which Dube's claim for retaliation appears to be based. Furthermore, there is no evidence that Dube suffered any other form of adverse job action following close in time to his 1994 complaint to human resources. The failure to rehire him did not occur until the spring of 1996, and the latest request for accommodation to which he attributes the

negative employment decision occurred in June, 1995, nine months earlier.[3] The evidence is too tenuous to support an inference that the failure of the defendant to rehire Dube was based upon retaliation for making a complaint in 1994 to human resources for lack of accommodations, going over his then supervisor's head in 1994, or requesting accommodations from 1992 through 1995.

It is not necessary to address the plaintiff's other claims on appeal. All such claims depend on being able to show that he is handicapped as that term is used in the statute, which he cannot do.

*Judgment affirmed.*

---

[3]Ordinarily, one event following another is not, by itself, sufficient evidence of causality to establish a prima facie case of unlawful retaliation, particularly where, as here, the two events are separated by months, not days. *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 662 n.11 (1996). See *Prader* v. *Leading Edge Products, Inc.*, 39 Mass. App. Ct. 616, 617-618 (1996). See also *Clark County Sch. Dist.* v. *Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all").