**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**TIMOTHY J. LEMON**
Knox, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FREDDIE BOGGESS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 75A03-1112-CR-581 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE STARKE CIRCUIT COURT
The Honorable Kim Hall, Judge
Cause No. 75C01-1107-FB-28

**August 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## CASE SUMMARY

Freddie Boggess was convicted of dealing in methamphetamine, as a Class B felony; possession of chemical reagents or precursors with intent to manufacture, as a Class D felony; driving while suspended, as a Class A misdemeanor; and false informing, as a Class B misdemeanor, following a jury trial. He appeals his convictions for dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture, raising the following issues for review:

1. Whether the evidence is sufficient to support his conviction for dealing in methamphetamine; and

2. Whether his convictions for dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture violate double jeopardy principles.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of July 7, 2011, Boggess was driving his mother's Dodge Caravan on State Road 8 in Starke County. Indiana State Police Master Trooper Douglas Parker saw that one of the minivan's headlights was unlit and initiated a traffic stop. When Trooper Parker asked Boggess for identification, Boggess stated that he did not have his license with him and identified himself as David Boggess. Trooper Parker checked that name in a database and determined that David Boggess was licensed to drive in Indiana with restrictions, and the vehicle registration for the minivan reflected its ownership by Dolores Boggess, Boggess' mother. Trooper Parker issued Boggess a warning in David Boggess' name concerning the unlit headlight and permitted Boggess to leave the scene.

On the afternoon of July 8, 2011, Boggess was again driving the minivan in Starke County when he passed a traffic stop being conducted by Starke County Sheriff's Deputy Adam Gray and Detective Robert Olejniczak. Detective Olejniczak saw Boggess drive past, recognized Boggess, and knew from prior experience that Boggess' driving privileges were suspended. Detective Olejniczak therefore asked Deputy Gray to stop Boggess' vehicle. Deputy Gray reentered his police car and initiated a traffic stop.

After stopping the minivan, Deputy Gray asked Boggess for his name and identification, and Boggess again identified himself as David Boggess. A short time later Detective Olejniczak arrived to assist Deputy Gray and stated that he knew Boggess as Freddie Boggess from prior encounters. Boggess continued to insist that he was David Boggess. To prove his asserted identity, he produced the written warning Trooper Parker had issued him the prior day. But the detective insisted that he could identify Boggess based upon certain tattoos. Deputy Gray requested information from dispatch about Freddie Boggess' physical characteristics. Boggess' visible tattoos matched the description for Freddie Boggess. Detective Olejniczak arrested Boggess and transported him to the Starke County Jail. A subsequent physical search at the jail confirmed Boggess' identity to be Freddie Boggess based upon numerous tattoos on his body.

Because Boggess was the only occupant of the minivan when he was arrested, Deputy Gray followed Starke County Sheriff's Department policy and inventoried the van's contents before it was towed from the scene. Soon after initiating the inventory search, Deputy Gray found a can of kerosene fuel, pickling salt, and coffee filters. Deputy Gray recognized these items as ones commonly found in mobile

3

methamphetamine manufacturing laboratories, immediately ceased his search, and called for assistance from an Indiana State Police methamphetamine laboratory team.

Two Indiana State Police Troopers, Keith Bikowski and Brandon McBryer, arrived at the scene and searched the minivan. In the search they recovered the torn corner of a plastic bag containing a white powdery substance that was later determined to be 0.16 grams of methamphetamine, eight lithium batteries, used coffee filters, plastic tubing, a can of kerosene, a bottle of drain cleaner, a half-full box of pickling salt, a black nylon case containing five capped syringes with attached hypodermic needles, a digital scale, and a burned pen casing. In the cargo area they also found a plastic bag with a moist, brown sugar-like substance that tested positive for production of hydrochloric gas, which is produced by and used in the methamphetamine manufacturing process.

On July 13, the State charged Boggess with dealing in methamphetamine, as a Class B felony; possession of methamphetamine, as a Class D felony; possession of chemical reagents or precursors with intent to manufacture, as a Class D felony; driving while suspended, as a Class A misdemeanor; false informing, as a Class B misdemeanor; and with being an habitual offender. On November 15, 2011, the State filed an amended information omitting the habitual offender allegation. Following a jury trial on November 16 and 17, 2011, the jury found Boggess guilty of all charges. The trial court entered judgment on all counts except possession of methamphetamine.

On November 23, the court held a sentencing hearing and sentenced Boggess to seventeen years imprisonment for dealing in methamphetamine, three years imprisonment for possession of chemical reagents or precursors with intent to

4

manufacture, one year imprisonment for driving while suspended, and six months imprisonment for false informing, all to be served concurrently. Boggess now appeals.

## DISCUSSION AND DECISION

### Issue One: Sufficiency of the Evidence

Our standard of review in sufficiency matters is well-settled. We consider only the probative evidence and reasonable inferences supporting the verdict. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Boggess contends that the evidence is insufficient to support his conviction for dealing in methamphetamine.[1] To prove dealing in methamphetamine, as a Class B felony, the State was required to show beyond a reasonable doubt that Boggess possessed methamphetamine with intent to manufacture the same, pure or adulterated. Ind. Code § 35-48-4-1.1(a)(2)(A); Appellant's App. at 66. Boggess contends that the evidence is

---

[1] Boggess does not challenge the sufficiency of evidence to support any of his other convictions.

insufficient to show that he "ever intended to manufacture methamphetamine." Appellant's Brief at 5.[2]

Boggess maintains that the State did not show that he knowingly or intentionally possessed methamphetamine, with intent to manufacture the same, pure or adulterated. But Boggess stipulated that officers found in the van's center console a plastic baggie with a corner cut off and a torn corner of a plastic baggie containing a white powdery substance, which was later determined to be 0.16 grams of methamphetamine. Thus, the State showed that he possessed methamphetamine.[3]

We next address whether the evidence is sufficient to show his intent to manufacture methamphetamine. Boggess argues that the State did not show that he actually or constructively possessed the precursors found inside the van. Actual possession occurs when an individual "'has direct physical control over the item.'" Massey v. State, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004) (quoting Henderson v. State, 715 N.E.2d 833, 835 (Ind. 1999)). Because Boggess did not have actual possession of the evidence officers found in the van, the State was required to prove that he had constructive possession of them. "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." Iddings v. State, 772 N.E.2d 1006, 1015 (Ind. Ct. App. 2002) (citation omitted), trans. denied.

---

[2] Insofar as Boggess also asserts that the State failed to show that he had already manufactured methamphetamine at the time of his arrest, we simply note that the State was only required to demonstrate that Boggess intended to manufacture methamphetamine. See Ind. Code § 35-48-4-1.1(a)(1)(A).

[3] For the same reasons, we do not consider Boggess' additional assertion that there was no methamphetamine in the van.

Where the defendant has possession of the premises where contraband is discovered, but that possession is not exclusive, then the inference of intent must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence. Gee v. State, 810 N.E.2d 338, 341 (Ind. Ct. App. 2004) (citation omitted). These "additional circumstances" have been shown by various means, including:

> (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

Id. (citation omitted). And to prove the defendant's capability to maintain dominion and control, he must be "able to reduce the controlled substance to his personal possession." Grim v. State, 797 N.E.2d 925, 831 (Ind. 2003). "In a manufacturing type [sic] setting, a defendant's presence does not compel a conviction but it does present a prima facie case of possession." Moore v. State, 613 N.E.2d 849, 851 (Ind. Ct. App. 1993).

Here, Boggess was the only individual in the minivan when it was stopped on July 8, and he had driven the van the prior evening when Trooper Parker stopped him because of a nonfunctioning headlight. Boggess had borrowed the van from his mother two days earlier. The small corner of a plastic baggie that contained 0.16 grams of methamphetamine was located in the front console of the vehicle, which was within Boggess' reach while driving the minivan. Officers also found in the front area of the van eight lithium batteries, syringes, and a pen casing with burn marks. In the rear cargo area of the vehicle, in plain view along with Boggess' bag, were plastic aquarium tubing,

kerosene, and soiled coffee filters. Trooper Bikowski also found the plastic bag containing the brown sugar-like substance that produced hydrochloric gas, which he testified was indicative of an ongoing methamphetamine manufacturing process. Other officers likewise testified that all of the seized items are commonly used in the manufacture of methamphetamine.

Some of the items were found within his reach in the driver's seat of the van, and the evidence taken from the cargo area was in plain view next to Boggess' personal property. And at both traffic stops, Boggess denied his identity, repeatedly so on the day of his arrest. Considered together, this evidence supports an inference that Boggess constructively possessed material used to manufacture methamphetamine. And from his possession of the precursors, we can reasonably infer that he intended to manufacture methamphetamine. See, e.g., Jones, 783 N.E.2d at 1139. Boggess' insistence that the State did not show his possession of those materials because others had been in the van the day before his arrest amounts to a request that we reweigh the evidence, which we will not do. See id. The State proved Boggess' intent to manufacture methamphetamine. Thus, Boggess' argument that the evidence is insufficient to support his conviction for Class B felony dealing in methamphetamine must fail.

### Issue Two: Double Jeopardy

Boggess next contends that his convictions for dealing in methamphetamine and possession of chemical agents or precursors with intent to manufacturer violate double jeopardy principles under Indiana's actual evidence test. Article I, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the

same offense." Our supreme court has explained that two offenses are the same offense if the statutory elements of the crime are the same or the actual evidence used to convict the defendant of two offenses is the same. Richardson v. State, 717 N.E.2d 32, 49-50 (Ind. 1999). The statutory elements analysis uses the test set forth by the United States Supreme Court in Blockberger v. United States, 284 U.S. 299 (1932). Goldsberry v. State, 821 N.E.2d 447, 459 (Ind. Ct. App. 2005) (citation omitted). Boggess does not argue that the statutory elements test applies. We therefore turn to his argument under the actual evidence test.

Under the actual evidence test, "the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." Richardson, 717 N.E.2d at 53. To establish a double jeopardy violation, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Id. However, "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002) (citations omitted).

Application of the actual evidence test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective. Rexroat v. State, 966 N.E.2d 165, 169 (Ind. Ct. App. 2012) (citation omitted), trans. denied. "In determining the facts used by the fact-finder to establish the

9

elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." Id. (internal quotation marks omitted).

Here, Boggess was convicted of both dealing in methamphetamine ("Count I") and possession of chemical reagents or precursors with intent to manufacture ("Count III"). Again, to prove that Boggess committed Count I, the State was required to show that he possessed methamphetamine with intent to manufacture methamphetamine, pure or adulterated. See Ind. Code § 35-48-4-1.1(a)(2)(A). And to prove Count III, the State was required to prove that he "possess[ed] two or more precursors with the intent to manufacture methamphetamine, a schedule II controlled substance, to-wit: Sodium Hydroxide (Rooto Drain Cleaner); Organic Solvents (kerosene); and Salts and Sulfuric Acid (pink granules)[.]" Appellant's App. at 66; see also Ind. Code § 35-48-4-14.5.

Contrary to Boggess' contention on appeal, and as mentioned above, officers found methamphetamine wrapped in a corner of a plastic baggie in the van.[4] As discussed above, that evidence supports Boggess' conviction for Count I. To prove Count III, as alleged in the charging information, the State was required to show that Boggess possessed at least two of the following: drain cleaner, kerosene, salts, and sulfuric acid.

In closing argument, the State referred to Boggess' possession of two of these four precursors as supporting a conviction for Count I:

> Then we get to the dealing in methamphetamine statute. Now under the
> dealing statu[t]e, there's a number of different ways in which a defendant

---

[4] We find it interesting that Boggess denies that officers found the methamphetamine in the van in light of the fact that, in Exhibit 37, he stipulated that a forensic scientist tested evidence marked as Exhibit 35 and that the testing showed that evidence to contain .16 gram of methamphetamine. A party cannot change his position on appeal. In any event, Boggess' new argument is wholly meritless.

10

can be charged. What the State charged in this case is with [sic] possession of methamphetamine with intent to manufacture. So how did we prove that to you? Once again, you heard from Trooper Bikowski and he told you very clearly he found the chemicals, some of which were still, I think he said damp or wet, that they were still actively interacting with each other creating the hydrochloric gas; that he told you that is actual process of manufacturing methamphetamine; that you have the tubing, you have the electric Cal tape, you went through and had the Ro[o]to drain cleaner. You had the kerosene which would be the solvent, the clear liquid that the methamphetamine gets stuck in and they have to add the gas to it to make it sort of rain out or fall out of it. . . .

Transcript at 259-60. In other words, the State relied on two of the four precursors listed on the charging information under Count III to support both convictions for both Count I and Count III.

But Count III of the charging information also alleged that Boggess possessed two other precursors, namely, salts and sulfuric acid. And Boggess cannot show that the State relied on the salts and sulfuric acid to support the conviction for Count I. The jury could have relied on Boggess' possession of salts and sulfuric acid, which would have been sufficient to convict him of Count III. As such, Boggess has not shown a reasonable possibility that the jury used the same evidence to establish all of the essential elements of both Count I and Count III. Boggess' double jeopardy argument must fail.

Affirmed.

KIRSCH, J., and MAY, J., concur.

11