NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-56

MARY REGAN

vs.

DEBORAH HOOPER & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Mary Regan, appeals from a Superior Court judgment entered following the grant of summary judgment in favor of her former employer and two supervisors on her claims of gender discrimination, retaliation, interference, and aiding and abetting under G. L. c. 151B.  We vacate the judgment on the claim of gender discrimination and remand for further proceedings.  We affirm the judgment on the claims of retaliation, interference, and aiding and abetting.

Background.  We summarize the basic facts in the light most favorable to Regan, as the party opposing summary judgment, drawing all reasonable inferences in her favor.  See Bulwer v.

_____

[1] President and Fellows of Harvard College and Denis Collet.

Mount Auburn Hosp., 473 Mass. 672, 680 (2016).  In August 2011, President and Fellows of Harvard College (Harvard) hired Regan as Associate Portfolio Director for the Executive Education program at Harvard Business School (HBS).  Her responsibilities included ensuring the overall success of a portfolio of open enrollment and global programs that provided seminars taught by HBS faculty to business executives.  In July 2013, Regan was promoted to portfolio director.  Throughout Regan's employment at HBS, Deborah Hooper directly supervised her, and Denis Collet was the Associate Director or Director of Human Resources.

In January 2016, Hooper told Regan that certain HBS faculty members were unhappy with her performance.  Hooper met with Regan and raised issues about her "aggressive" style, "inappropriate body language," "angry" appearance, and having her office door closed.  She directed Regan to meet with Collet. On January 25, 2016, Regan met with Collet and expressed "concern[] about the stereotypical gender-related critiques made about [her]."  After the meeting, Collet emailed his supervisor that

> "[i]t is going to be a longer process with [Regan].  She expressed concern about a lack of process and the fact that concerns with her performance haven't been clear or documented as a part of a performance improvement plan . . . she's stated she hasn't heard negative feedback and at the very least deserves the opportunity to improve on aspects of her personality that are not meeting expectations."

2

On February 11, 2016, Regan emailed Collet, "I want to put on record that the way I have been treated by my manager, Deborah Hooper, and by HBS is discriminatory, based on my being a female." She also stated that she had hired legal counsel and that if her employment situation was not resolved amicably, she expected to file a complaint for sex discrimination with the Massachusetts Commission Against Discrimination.

In March 2016, Harvard provided Regan with the option to resign with a separation package or stay in her position subject to a Performance Improvement Plan (PIP). Regan remained in her job and accepted the PIP. On May 13, 2016, Regan received the PIP from Hooper. According to Harvard, the PIP identified areas of concerns and expected improvements Regan must make. Regan believed that the PIP was "harsh and punitive, made false statements about [her] job performance and [] used as a means to terminate [her] employment." The PIP stated Regan would have to show marked improvement by July 8, 2016 "or disciplinary action may be taken." After receiving the PIP, Regan met weekly with Hooper.

On June 3, 2016, Regan submitted a written rebuttal to the PIP. During that week, Harvard began to plan to terminate Regan's employment. On June 14, 2016, Hooper emailed her direct supervisor that she and Collet "discussed whether final

3

conversation [regarding terminating Regan] would happen next week or [the] week after." Harvard terminated Regan's employment on July 12, 2016.

Discussion.  "Our review on summary judgment is de novo." Yee v. Massachusetts State Police, 481 Mass. 290, 294 (2019). "In considering a motion for summary judgment, we review the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party."  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 395 (2016), quoting Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 777 (2013).  The moving party has "the burden of establishing that there is no genuine issue as to any material fact and that [it is] entitled to judgment as a matter of law" (citation omitted). Verdrager, supra, quoting Drakopoulos, supra.

1.  Discrimination.  Regan contends that the judge used an incorrect standard in determining that she had failed to establish a prima facie case of gender discrimination against Harvard for the purposes of summary judgment.  We agree.

To prove employment discrimination at trial, an employee must demonstrate (1) membership in a protected class, (2) harm by being subject to an adverse employment action by an employer, (3) discriminatory animus by the employer in taking that action, and (4) a causal relationship between the animus and the adverse

4

action.  See Bulwer, 473 Mass. at 680.  At summary judgment, there are two distinct paths available to a plaintiff to prove the third and fourth elements of discrimination.  A plaintiff "may survive a motion for summary judgment by providing [d]irect evidence of [the] elements of discriminatory animus and causation" (quotation and citation omitted).  Id. at 680-681. However, because direct evidence to support these elements "rarely exists," a plaintiff may also survive such a motion by providing "indirect or circumstantial evidence [of discriminatory animus and causation] using the familiar three-stage, burden-shifting paradigm first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)" (quotation and citation omitted).  Bulwer, supra.

The first stage of this paradigm requires the plaintiff to prove a prima facie case of discrimination.  See Bulwer, 473 Mass. at 681.  If the plaintiff meets this burden, the second stage requires the employer to rebut the presumption of discrimination established by the plaintiff by "articulating a legitimate, nondiscriminatory reason" for the adverse action (citation omitted).  Id.  If the employer meets its burden, the third and final stage requires the plaintiff to present evidence that "the employer's articulated justification . . . is not true but a pretext" (citation omitted).  Id.

5

Here, the judge began her analysis by acknowledging the proper standard, stating that the case "must be approached using the three-part burden-shifting analysis." However, the judge then analyzed Regan's discrimination claim based on the evidentiary burden required at trial, including the element of causation. See Bulwer, 473 Mass. at 680. In a discrimination case arising from a termination, the plaintiff's prima facie case at summary judgment has only three elements: (1) membership in a class protected by G. L. c. 151B, (2) job performance at an acceptable level, and (3) termination. See id. at 680-681. Causation is not one of these elements. Rather, causation is relevant at the third stage of the burden-shifting paradigm. Additionally, although applicable to a plaintiff's burden of proof of causation at trial, see Trustees of Health & Hosps. of Boston, Inc., v. Massachusetts Comm'n Against Discrimination, 449 Mass. 675, 682-683 (2007), evidence that Regan was treated differently than a male comparator was not required as part of her prima facie case.[2] Thus, it was also error for the judge to consider comparator evidence.

2. Retaliation. Regan also argues that summary judgment was improper on her retaliation claim against Harvard. "A claim

_____

[2] Because the judge determined that Regan did not demonstrate a prima facie case of discrimination, she did not reach the other stages of the burden-shifting paradigm.

6

of retaliation is separate and distinct from a claim of discrimination."  Verdrager, 474 Mass. at 405.  To make out a prima facie case of retaliation, Regan was required to show (1) her engagement in protected conduct, (2) the infliction of some adverse action by Harvard, and (3) a causal connection between the two.  See Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 260 (2021).

The chronology of events is one method to prove causation, see Verdrager, 474 Mass. at 407, but Regan's effort to do so here fails.  Although a causal link may be inferred "[w]here adverse employment actions follow close on the heels of protected activity, . . . as the elapsed time between those two events becomes greater, the inference weakens and eventually collapses."  Mole v. University of Mass., 442 Mass. 582, 595 (2004).  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Id., quoting Clark County Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001).  Generally, the adverse employment action must be "in the immediate aftermath of the employer's becoming aware of the employee's protected activity," Mole, supra, at 592, and periods of multiple months

7

are insufficient.  See Dube v. Middlesex Corp., 59 Mass. App. Ct. 734, 741 n.3 (2003) ("one event following another is not, by itself, sufficient evidence of causality to establish a prima facie case of unlawful retaliation, particularly where . . . the two events are separated by months, not days").  Here, where approximately five months separated Regan's February 2016 written complaints of discrimination from her July 2016 termination, a causal connection between the events cannot be established by temporal proximity.[3]  We thus conclude that summary judgment was proper on Regan's claim of retaliation.

3.  <u>Interference and aiding and abetting</u>.  Finally, Regan argues that we "should uphold [her] claims against the individual defendants."  Her brief does not identify the elements for the claims of interference and aiding and abetting under G. L. c. 151B or offer legal authority supporting her position.  Instead, Regan merely quotes the portion of the statute that states that individuals may be held liable for perpetuating or assisting another who violates G. L. c. 151B; baldly asserts that Hooper and Collet knew that Regan had claimed that "the allegations against her [of substandard job

_____

[3] We are not persuaded by Regan's argument that the calculation of temporal proximity effectively "restarted" after her rebuttal email in June 2016 in response to receiving the PIP from Harvard.

8

performance] were false, discriminatory, and pretextual, but they did not investigate;" and suggests that a jury should be allowed to evaluate the evidence. We therefore decline to consider Regan's implicit argument that the judgment on these claims was in error because briefing on the issue does not rise to the level of appellate argument. See Commonwealth v. Beverly, 485 Mass. 1, 16 (2020), citing Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). In any event, we agree with the motion judge that there was no evidence that Hooper or Collet committed a "wholly individual [and] distinct wrong," separate from the discrimination and retaliation claims against Harvard, see Lopez v. Commonwealth, 463 Mass. 696, 713 (2012), and thus affirm the judgment on the claims of interference and aiding and abetting.

Conclusion. The judge used an incorrect standard in determining that Regan had failed to establish a prima facie case of gender discrimination, therefore we vacate the judgment for Harvard and remand for further proceedings on the gender discrimination claim. Because Regan failed to establish a causal relationship between her protected conduct and termination of her employment, we affirm the judgment on her claim of retaliation against Harvard. Finally, declining to consider Regan's argument, but noting that there was no evidence

9

to support the claims against the individual defendants, we affirm the judgment on the claims of interference and aiding and abetting.[4]

So ordered.

By the Court (Meade, Blake & Brennan, JJ.[5]),

*Paul Little*

Clerk

Entered:  August 16, 2024.

---

[4] The parties' requests for fees, damages, and costs are denied.

[5] The panelists are listed in order of seniority.