## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 07 2020, 6:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessie Hatcher,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 7, 2020

Court of Appeals Case No.
19A-CR-2613

Appeal from the Cass Superior Court

The Honorable Richard A. Maughmer, Judge

The Honorable Thomas C. Perrone, Senior Judge

Trial Court Cause No.
09D02-1301-FB-2

**Crone, Judge.**

# Case Summary

[1] A jury found Jessie Hatcher guilty of class B felony rape, class D felony criminal confinement, class D felony strangulation, and class A misdemeanor domestic battery. On appeal, Hatcher argues that his convictions violate both federal and state double jeopardy principles. We disagree and therefore affirm.

# Facts and Procedural History

[2] Hatcher became romantically involved with C.L. and moved into an upstairs apartment in Logansport with her and her two-year-old son in November 2012. Both Hatcher's and C.L.'s names were on the lease. Hatcher was unemployed, and C.L. had a second-shift job at a meatpacking plant. In January 2013, Hatcher told C.L. that "he was tired of the bull crap and that he was moving out." Tr. Vol. 2 at 159. He left the apartment, and C.L. did not think that he would return. Later that day, however, C.L. heard Hatcher "screaming" outside the apartment, "telling [her] to open the door and then [she] heard the downstairs window shatter out of [her] front door." *Id*. at 160. C.L. called law enforcement, who asked Hatcher to leave, which he did.

[3] The next morning, Hatcher returned to the apartment "in a bad mood" and "want[ing] to argue." *Id*. at 162. C.L. became nervous and went to her mother's house, where her son was staying. She then went to work and returned to her apartment around 2:30 a.m. Hatcher was not there. C.L. took a shower and went to bed. At some point, Hatcher entered the apartment, drunk and "really mad." *Id*. at 166. He saw a text from C.L.'s ex-boyfriend on

her phone, started calling her names, and eventually "pulled [her] out of [her] bed and started beating [her] head off the floor." *Id*. at 167. C.L. "crawled up on the little baby mattress that [she] had on the floor[,]" and Hatcher beat her head against the brick wall. *Id*. He punched her, kicked her, and ripped hair off the sides and back of her head. C.L. told Hatcher that she "just wanted to leave" and be with her son at her mother's house, and he told her that "he didn't care, that if [her] son was around, he'd be doing the same thing to [her] kid." *Id*. at 168.

[4]    C.L. kept "trying to get away[,]" which "made it worse." *Id*. She tried to hide her phone in her bra, but Hatcher ripped her shirt, grabbed the phone, and threw it "against the brick wall and shattered it." *Id*. At some unspecified point, Hatcher "had his arm around [C.L.'s] neck[.]" *Id*. at 170. He pulled off her pants, ripped off her underwear, threw her on the bed, and forced her to have sexual intercourse. She was "afraid he was going to keep beating [her]" if she did not comply. *Id*. Hatcher then pulled C.L. off the bed, punched her, kicked her, stomped on her ankles, and choked her "to the point where [she] felt like [she] was dying." *Id*. at 171. Hatcher threw the mattress off the bed and told C.L. to get back on the bed. She told him that she did not want to be on the box springs, so he pulled the mattress onto the bed, threw her on top of it, and forced her to have sex again. When he was finished, he "told [her she] needed to lay down and get some rest because he knew [she] had to go to work." *Id*. at 175. She told him that she "couldn't go to sleep because [she] was afraid that [she] wouldn't wake up." *Id*.

[5] Eventually, C.L. took a shower. Hatcher stood in the bathroom and watched, stating that "[h]e didn't want [her] to escape out of the bathroom window." *Id*. at 176. C.L. told Hatcher that she had an appointment to get food stamps. He told her that she "could go as long as he went." *Id*. at 177. They went to the food stamp office, and she "wasn't allowed to leave his side." *Id*. They returned to the apartment, and Hatcher told C.L. she "needed to lay down and rest, and [she] couldn't do that." *Id*. at 178. Despite her pain and injuries, C.L. drove to work because she was in danger of losing her job if she did not go. After she got to work, she started crying and was taken to human resources, where she "told them everything." *Id*. at 182. Her parents took her to the emergency room, where she was examined by staff and interviewed by police.

[6] The State charged Hatcher with class B felony rape, class D felony criminal confinement, class D felony strangulation, class A misdemeanor interference with the reporting of a crime, and class A misdemeanor domestic battery. The trial court issued an arrest warrant, which remained outstanding until Hatcher was arrested in Chicago in 2018. A two-day jury trial was held in August 2019. The trial court entered a directed verdict on the interference charge, and the jury found Hatcher guilty of the remaining charges. The trial court imposed consecutive executed sentences of twenty years for rape, three years for criminal confinement, and three years for strangulation, and a concurrent executed sentence of one year for domestic battery, for an aggregate sentence of twenty-six years. Hatcher now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Hatcher has not established a violation of the U.S. Constitution's double jeopardy clause.

[7] We first address Hatcher's assertion that his convictions violate federal double jeopardy principles. "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides: 'Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.'" *Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied*. "The Double Jeopardy Clause protects against successive prosecutions following conviction, reprosecution after acquittal, and multiple punishments for the same offense." *Games v. State*, 684 N.E.2d 466, 473 (Ind. 1997), *modified on reh'g on other grounds*, 690 N.E.2d 211, *cert. denied* (1998). "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Hatcher contends that he received multiple punishments—consecutive sentences for rape and criminal confinement—for what he alleges was the same offense. "Whether convictions violate double jeopardy is a pure question of law, which we review de novo." *Rexroat*, 966 N.E.2d at 168. Hatcher bears the burden of establishing that a double jeopardy violation has occurred. *Bennett v. State*, 883 N.E.2d 888, 893 (Ind. Ct. App. 2008), *trans. denied*.

"In the context of multiple punishments imposed in a single criminal proceeding, the [U.S. Supreme] Court has declared that the sole purpose of the Double Jeopardy Clause is to ensure that a court imposes no more punishment on a defendant than the legislature intended." *Games*, 684 N.E.2d at 474 (citing, inter alia, *Brown*, 432 U.S. at 165). "Whether multiple punishments may be imposed against a defendant in a single proceeding is, thus, solely a matter of legislative intent." *Id.* "While the legislature 'ordinarily does not intend to punish the same offense under two different statutes,' the legislature is constitutionally permitted to do so, as long as the intent of the legislature is clear." *Id.* (quoting *Whalen v. United States*, 445 U.S. 684, 692 (1980)); *see also Brown*, 432 U.S. at 165 ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial."). "Where legislative intent is clear that multiple punishment is intended, double jeopardy is not violated and further inquiry into the statutory elements is not appropriate." *Games*, 684 N.E.2d at 474 (citing *Albernaz v. United States*, 450 U.S. 333, 340 (1981)). "It is only when legislative intent to impose multiple punishments is uncertain that further inquiry is required." *Id.* at 475.

"This further inquiry, known as the 'same elements' test, determines whether or not a legislature intended to impose separate punishments for multiple offenses arising in the course of a single act or transaction[.]" *Id.* "The applicable rule is

that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id*. (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "If *Blockburger* is satisfied, the court assumes that the statutes are not punishing the same offense and multiple punishment is constitutionally permitted. If the test is not satisfied, double jeopardy is violated." *Id*. (footnote omitted). In *Games*, the Indiana Supreme Court abrogated contrary Indiana precedent and clarified that, consistent with controlling federal jurisprudence, in applying the same elements test, "we look only to the statutory elements of the offenses, not to the charging information, the jury instructions outlining the elements of the crime, or the underlying proof needed to establish the elements." *Id*. at 477.

[10] When Hatcher committed his offenses in January 2013, Indiana Code Section 35-42-4-1 defined class B felony rape in pertinent part as follows:

> (a) [A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:
>
> > (1) the other person is compelled by force or imminent threat of force;
> >
> > …
>
> commits rape, a Class B felony.

Indiana Code Section 35-42-3-3(a) defined class D felony criminal confinement in pertinent part as follows:

> (a) A person who knowingly or intentionally:
>
> > (1) confines another person without the other person's consent; …
>
> commits criminal confinement[,] … a Class D felony.

And Indiana Code Section 35-42-3-1 defined "confine" as "to substantially interfere with the liberty of a person."

[11] In asserting that Indiana Code Sections 35-42-4-1 and 35-42-3-3 define the same offense for purposes of the federal double jeopardy clause, Hatcher purports to dive straight into an application of the same elements test without first examining whether legislative intent is clear that multiple punishment was intended, contrary to *Albernaz* and *Games*.[1] And instead of actually determining whether each statute requires proof of an additional fact which the other does not, Hatcher simply attempts to analogize this case to *Brown*, which involved joyriding and auto theft statutes, and says, "the rape occurred during a single continuous confinement." Appellant's Br. at 23. We find this analysis unpersuasive.

---

[1] Because Hatcher does not make a separate argument regarding legislative intent, we do not address that issue.

Clearly, the rape statute requires proof of at least one additional fact that the criminal confinement statute does not, i.e., a knowing or intentional act of sexual intercourse, and the criminal confinement statute requires proof of at least one additional fact that the rape statute does not, i.e., substantial interference with another person's liberty. The evidence offered to prove the force or threat of force used to commit a rape may be substantially similar to that offered to prove a substantial interference with the victim's liberty, but that is irrelevant for purposes of federal double jeopardy analysis. *See Iannelli v. United States*, 420 U.S. 770, 775 n.17 (1975) ("As *Blockburger* and other decisions applying its principle reveal, the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.") (citations omitted). Accordingly, we conclude that Hatcher has failed to establish a violation of the federal double jeopardy clause.[2]

## Section 2 – Hatcher has failed to establish a violation of the Indiana Constitution's double jeopardy clause.

Next, Hatcher contends that his convictions violate the Indiana Constitution's double jeopardy clause, and therefore his criminal confinement, strangulation,

---

[2] Hatcher also argues that the rape and criminal confinement offenses are the same offense for federal double jeopardy purposes because the latter is allegedly a lesser included offense of the former. This argument is inapposite because it relies on how the offenses are charged and proved, which Hatcher himself acknowledges are improper considerations in a federal double jeopardy analysis.

and domestic battery convictions must be vacated. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Despite its similar wording, "Indiana's Double Jeopardy Clause is not coterminous with its federal counterpart." *Martin v. State*, 740 N.E.2d 137, 140 (Ind. Ct. App. 2000), *trans. denied* (2001). Our supreme court has explained that two or more offenses are the same offense in violation of Indiana's double jeopardy clause "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

[14] Hatcher does not contend that his offenses are the same offense under *Richardson*'s statutory elements test. Instead, he relies on the actual evidence test, pursuant to which "we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts." *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). "To find a double jeopardy violation under this test, we must conclude that there is 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Id.* (quoting *Richardson*, 717 N.E.2d at 53). "The actual evidence test is applied to all the elements of both offenses." *Id.* "In other words … the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the

essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Id*. (quoting *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)). "Our precedents 'instruct that a "reasonable possibility" that the jury used the same facts to reach two convictions requires substantially more than a logical possibility.'" *Id*. (quoting *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008)). "The existence of a '"reasonable possibility" turns on a practical assessment of whether the [fact finder] may have latched on to exactly the same facts for both convictions.'" *Id*. (quoting *Lee*, 892 N.E.2d at 1236) (alteration in *Garrett*). "We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel." *Id*.

[15] The charging information here outlined the essential elements of each offense but offered no factual details. It alleged that Hatcher committed rape in violation of Indiana Code Section 35-42-4-1 by knowingly or intentionally having sexual intercourse with C.L. when she was compelled by force or the imminent threat of force; that he committed criminal confinement in violation of Indiana Code Section 35-42-3-3 by knowingly or intentionally confining C.L. without her consent; that he committed strangulation in violation of Indiana Code Section 35-42-2-9 by knowingly or intentionally applying pressure to C.L.'s throat or neck or obstructing her nose or mouth in a manner that impeded normal breathing or blood circulation; and that he committed domestic battery in violation of Indiana Code Section 35-42-2-1.3 by knowingly or intentionally touching C.L., who was living with Hatcher as if she were his

spouse, in a rude, insolent, or angry manner, resulting in bodily injury. Appellant's App. Vol. 2 at 21-22. The preliminary and final jury instructions reiterated these bare-bones allegations.

[16] The prosecutor's brief opening statement was nonspecific regarding what evidence would be used to prove each crime. The actual evidence presented at trial is summarized above. In his closing argument,[3] the prosecutor asserted that Hatcher committed rape by having sexual intercourse with C.L. and that "[t]he force took place when he punched her in the head repeatedly. When he bashed her head into the brick wall. When he kicked her. That was the force. That was the threat of the force at the time he was having sex." Tr. Vol. 3 at 12-13.

[17] Regarding criminal confinement, the prosecutor stated,

> I would argue that [C.L.] was confined both when the arm was around her neck, but really the confinement that I want you to find [Hatcher] guilty on is she wanted to leave. She wanted to go to her mom's. She wanted to go to her kid. He had said, "well, if your kid was here, I'd do the same thing to him" right? He would not let her leave. I think the reasonable thing here is that she was trying to leave.

*Id*. at 14.

---

[3] As will become evident, the prosecutor's closing argument is more relevant to Hatcher's common-law argument than his constitutional argument.

[18]     As for strangulation, the prosecutor remarked,

> [I]t's got to be in a manner that impeded the normal breathing or the blood circulation of [C.L.]  She indicated both, right?  She said she was having trouble breathing when [Hatcher] was doing it and she said she started to black out to do it and I'll tell you that is a result of oxygen in your blood not getting to your head.…  The [sexual assault nurse examiner] indicated that [C.L.'s] neck appeared swollen, which isn't something that always shows up on a picture well.…  She took great records.  "Patient reports discomfort in the neck area, said her jaw hurt.  Reported he choked me.  He did it, like, two times."  And the documentation there shows the extent of the injuries on her front and on her back during the rape and during the battery.  "Patient reports choking.  He did it, like, two times."  There's a specific notation for the scratch around her neck.  "Also reports he had me in a choke hold one time."  Bilateral injuries to the elbows and upper right back have appeared to be rug burns, which would be consistent with the idea that she was forced onto her back and she was struggling.  Right?  More evidence of the rape.

*Id*. at 16-17.

[19]     And finally, regarding domestic battery, the prosecutor stated,

> I guess, [Hatcher] was, he was living there.  He was eating there.  He was using oxygen.  It sounds like [C.L.] was putting food on the table, paying the utility bills, paying the rent, so that, to that extent they were both maintaining a common household.…  They were living, let me back up to the specific line, "living as if a spouse of [C.L.]"…  They were living in that manner and he should be found guilty of the domestic battery as well.

*Id*. at 16.

Hatcher argues that "[t]here is a reasonable possibility the jury used the same evidence to convict [him] of all four crimes." Appellant's Br. at 28. Assuming for argument's sake that there is a reasonable possibility that the jury found that he confined, strangled, and battered C.L. during the rape, as Hatcher suggests, the facts that established the essential elements of the first three offenses did not establish all the essential elements of rape, or of each other, as demonstrated by the charging information. Therefore, we conclude that Hatcher has failed to establish a violation of the Indiana Constitution's double jeopardy clause.

## Section 3 – Hatcher has failed to establish a violation of Indiana's common-law double jeopardy rules.

Finally, we address Hatcher's argument that his convictions violate Indiana's common-law double jeopardy rules. Our courts "have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002). "One of those rules prohibits '[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished.'" *Taylor v. State*, 101 N.E.3d 865, 872 (Ind. Ct. App. 2018) (alteration in *Taylor*) (quoting *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring)).

Hatcher contends that his strangulation, domestic battery, and rape convictions "violate Indiana's common law rules because the crimes of strangulation and [battery] were the very same acts used to prove the force element of [his] rape

conviction." Appellant's Br. at 32. Notwithstanding the prosecutor's suggestion to the contrary, C.L. unequivocally testified that Hatcher strangled her on the floor after the first act of nonconsensual sexual intercourse, which occurred on the bed, and she did not specify when he put his arm around her neck. Likewise, Hatcher punched and kicked C.L. and stomped on her ankles after that first sexual act. In sum, Hatcher has failed to establish a violation of Indiana's common-law double jeopardy rules. Therefore, we affirm.[4]

[23] Affirmed.

Bailey, J., and Altice, J., concur.

---

[4] C.L.'s testimony indicates that the State easily could have avoided any potential double jeopardy problems by more carefully delineating the evidence used to establish the essential elements of each crime.